Richard Franklin **MILLER** et al.,
Plaintiffs,

v.

Dale **CARSON**, Individually and in his capacity as Sheriff of Duval County, Florida and the Consolidated City of Jacksonville, Florida, et al., Defendants.

No. 74–382–Civ–J–S.

United States District Court,
M. D. Florida,
Jacksonville Division.

Feb. 25, 1975.

---

516

William J. Sheppard, Jacksonville, Fla., for plaintiffs.

William L. Coalson, Jacksonville, Fla., for defendants.

Raymond L. Gearey, Dept. of Legal Affairs, Civ. Div., Tallahassee, Fla., for the State.

John L. Briggs, U. S. Atty. (Lembcke) Jacksonville, Fla., for U. S. Marshal.

## ORDER AND MEMORANDUM OPINION

CHARLES R. SCOTT, District Judge.

This case came before the Court with respect to the city defendants' motion to modify injunction and/or motion for relief from judgment or order, filed herein February 6, 1975.

The parties have stipulated that a ruling on points 8 and 9 regarding guard control and visitation can be deferred pending submission by the city defendants of a report with respect to the Duval County Jail by officials of the Law Enforcement Assistance Administration of the United States Department of Justice. In addition, the plaintiffs and the city defendants filed with the Court stipulations regarding points 2 and 5 with respect to hygenic supplies and isolation cells so that no ruling thereon is necessary. Therefore, the Court will reach the other points *seriatim*.

## I. HOLDING CELLS

The city defendants have requested that the Court modify paragraph 3 of section I of its order and preliminary injunction of January 31, 1975, at page three, so as to increase the use of the holding cells from two hours to four hours and to increase the ordered maximum of ten inmates confined in any one holding cell to 21 inmates in holding cell 1–H only with all other holding cells to remain at the ordered maximum of ten each.

■ The principal reason stated by the city defendants for the requested increase in the use of the post-booking holding cells from two to four hours is simply that there are presently insufficient correctional personnel to perform all the necessary post-booking administrative tasks such as fingerprinting, taking mug-shots, assigning permanent cells, etc., within two hours after an inmate is placed in the post-booking holding cells. Although this particular problem could obviously be alleviated by the hiring of additional correctional staff, the Court recognizes that the hiring and training of such additional personnel requires time. Therefore, although the Court is reluctant to do so, the preliminary injunction will be modified in this regard to the limited extent that the city defendants will be allowed until April 1, 1975, to keep an inmate in a holding cell up to four hours. In addition, the city defendants will be allowed until May 1, 1975, to keep an inmate in a holding cell up to three hours. After May 1, 1975, no inmate shall be kept in a holding cell for longer than two hours. By that time, the city defendants should be able to have sufficient staff to streamline their post-booking procedures so as to meet the two hour time limit.

■ In addition, the city defendants have also requested that they be allowed to house as many as 16 to 21 inmates in holding cell 1–H instead of the required maximum of ten since holding cell 1–H is a little less than twice the size of each of the other four post-booking holding cells.

Because of the capacity of holding cell 1–H being somewhat greater than that of the other four post-booking holding cells, it seems reasonable to allow the city defendants to be able to use that cell to its logical capacity. However, this Court is of the opinion that no more than 15 inmates be housed in that particular cell because, although cell 1–H is somewhat larger than the other four, it has only one commode and only one water faucet for the use of the inmates incarcerated therein. Therefore, the preliminary injunction will be modified to allow the city defendants to house fifteen (15) inmates in holding cell 1–H.

## II. FIRE PREVENTION AND REGULATIONS

■ The city defendants have proposed a modification and clarification of this Court's preliminary injunction with respect to the provision requiring them to take immediate steps to comply with the state fire marshal's rules and regulations as well as the Jacksonville city fire code and to submit a report within 30 days thereof as to the particular steps taken. Said provision further required that "every effort . . . be made to include an indorsement to the aforesaid report from a representative of the State Fire Marshal as well as a representative from the Bureau of Fire Prevention, Jacksonville Fire Division." Paragraph 6 of section II, at page 5, of the preliminary injunction of January 31, 1975.

What the city defendants seem to be requesting is a technical interpretation of the state fire marshal's rules and the Jacksonville city fire code as they apply to the Duval County Jail. Since this Court obviously lacks the technical expertise to make this initial determination, the city defendants' challenge to enter this particular thicket will be declined. In fact, that is the reason that this Court initially required that every effort be made to include the indorsement of the state fire marshal's representative and of the Bureau of Fire Prevention of the Jacksonville Fire Division in the first place. Therefore, the motion will be denied as to that particular point.

## III. JUVENILES

The city defendants request a clarification of the preliminary injunction which requires in part that no juvenile be housed in the Duval County Jail. Paragraph 2 of section IV, at page 8, of the preliminary injunction of January 31, 1975.

Section 39.03(3)(b) of the Florida Statutes regarding the judicial treatment of juveniles provides in pertinent part as follows:

If the child is alleged to be both dependent and delinquent or in need of supervision, the intake officer may authorize either detention care or shelter care. *Under no circumstances shall the intake officer authorize the detention of any child in a jail or other facility intended or used for the detention of adults, except when a child is charged with a felony in the first degree, a life felony, or a capital felony. However, no child shall be placed in the same cell with any other adult or child alleged to have committed, or who has been adjudged to have committed, a crime.* . . . (emphasis added)

Section 39.03(5)(b) of the Florida Statutes provides as follows with respect to where a circuit judge may place a juvenile:

(b) Commencing January 1, 1974, *the judge* may not make an order directing the delivery of a child to a jail or other facility intended or used for the detention of adults, except:

1.a. When jurisdiction of the matter as a juvenile case has been waived or removed pursuant to § 39.02(6), *or*

b. When the court determines, upon the recommendation of the superintendent of the detention home and an intake officer, that the child is beyond the control of the detention home staff, *and*

2. *The receiving facility contains a separate section for juvenile offenders and has an adequate staff to supervise and monitor the child's activities at all times.* (emphasis added)

It appears that subsection (5)(b) 1.a. of Section 39.03 erroneously refers to Section 39.02(6) as the applicable provision for waiver or removal of juvenile court jurisdiction, the clearly applicable subsection being subsection (5) of Section 39.02. Subsection (5) provides as follows:

(5)(a) If the judge finds, after a waiver hearing as provided in § 39.09, that any child who is fourteen years of age or older and who, if an adult,

would be charged with a violation of Florida law should be tried as an adult, the judge may enter an order waiving jurisdiction and certifying the case for trial *as if the child were an adult*, and thereafter the child shall be subject to the jurisdiction of the appropriate court *as if the child were an adult*.

(b) The judge shall waive jurisdiction and certify the case for trial *as if the child were an adult* if:

1. The child is alleged to have committed a violation of law other than a juvenile traffic offense, and

2. Prior to the commencement of an adjudicatory hearing, the child, joined by a parent or, in the absence of a parent, by his guardian, demands to be tried *as an adult*. A written order shall be entered by the court setting forth said demand.

(c) A child of any age charged with a violation of Florida law punishable by death or by life imprisonment shall be subject to the jurisdiction of the court as set out in § 39.-06(7) unless and until an indictment on such charge is returned by the grand jury, in which event and at which time the court shall be divested of jurisdiction under this statute and the charge shall be made and the child shall be handled in every respect *as if he were an adult*. No adjudicatory hearing shall be held within fourteen days from the date that the child is taken into custody unless the state attorney advises the court in writing that he does not intend to present the case to the grand jury or that he has presented it to the grand jury but that the grand jury has declined to return an indictment. Should the court receive such a notice from the state attorney, or should the grand jury fail to act within the fourteen-day period, the court may proceed as otherwise required by law. (emphasis added)

The city defendants interpret the foregoing provision to mean that once a juvenile court judge (that is, a judge of the juvenile division of the circuit court) certifies that a child should be tried "as if the child were an adult," thereby vesting jurisdiction in the criminal division of the circuit court, a child may be placed in a jail such as the Duval County Jail.

This argument is clearly without merit. The clear import of subsection (5)(b) of Section 39.03 is that no child shall be in any facility intended or used for the detention of adults except in two sets of circumstances: (1) when juvenile court jurisdiction has been waived or removed *"and the receiving facility contains a separate section for juvenile offenders and has an adequate staff to supervise and monitor the child's activities at all times,"* or (2) when the court determines that the child is beyond the control of the detention home staff *"and the receiving facility contains a separate section for juvenile offenders and has an adequate staff to supervise and monitor the child's activities at all times."* Fla. Stat. § 39.03(5)(b). The *sine qua non* in each set of circumstances is that the receiving facility must contain a separate section for juvenile offenders and that it must have an adequate staff to supervise and monitor the child's activities at all times.

The evidence before the Court, as shown by this Court's finding of fact on pages 14–15 of the findings of fact and conclusions of law of January 31, 1975, indicates that juveniles in the Duval County Jail are housed in a cellblock (2–C) which does not have showers available and the juveniles are showered in the area which contains adult violent felony offenders. During the course of the hearings in this case, a juvenile was raped by an *adult* inmate in cellblock 2–C. Thus, there is considerable doubt as to whether juveniles are being segregated from adults in the Duval County Jail.

However, assuming *arguendo* that a separate section for juveniles does or will exist in the Duval County Jail, the evidence is absolutely uncontroverted that the city defendants do not have sufficient staff to supervise and monitor

the juveniles' activities on a continuing basis. Therefore, under Section 39.03(5)(b), this Court reaffirms its requirement that no juvenile may be housed in the Duval County Jail. Under the doctrine of pendent jurisdiction, United Mineworkers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), this Court clearly has the power to enforce state law where the federal and state claims are derived from a "common nucleus of operative fact", and are such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding". 383 U.S. at 725, 86 S.Ct. at 1138.

■ For purposes of clarification as to those individuals who are to be considered juveniles for purposes of this case, the parties need only refer to the definition of a "child" as set forth in the state statute itself. Section 39.01(6) of the Florida Statutes provides that a "child" is "any married or unmarried person under the age of eighteen years or any person who is charged with a violation of law occurring prior to the time that person reached the age of eighteen years". The "certification to be tried as an adult" section of the statute, Fla.Stat. § 39.02(5), is not to the contrary. Clearly, that section does not transform, by certification, a "child" into an "adult", but merely serves to determine the judicial procedure by which the child is to be treated for a criminal violation. In other words, the statute does not alter the status of the "child" as defined under the Act, but merely the particular division of the circuit court which has jurisdiction over his case, either juvenile or criminal. This conclusion is borne out by the phrase which is repeated throughout the certification subsection: *"as if the child were an adult"*. The subjunctive nature of the verb therein clearly reflects a statement contrary to fact. Therefore, this Court concludes that a "child" or juvenile remains a "child" or juvenile for purposes of the type of facility in which he is to be held regardless of the fact that he may be certified to be tried as an adult

with all its attendant consequences, such as the right to trial by jury.

■ This Court is all the more convinced of its conclusion because the remedial nature of this statute requires that it be accorded a liberal interpretation so as to carry out the progressive intent of the legislature. The foregoing conclusion is in accord with that legislative intent.

### IV. OUTDOOR RECREATIONAL FACILITIES

The city defendants further seek to modify that portion of the Court's preliminary injunction requiring outdoor recreational facilities. Paragraph (e), page 13, preliminary injunction of January 31, 1975.

To justify its decision that the city defendants must submit plans for the establishment of a recreation program which includes especially outdoor and indoor exercise programs, this Court need only quote from the case of Rhem v. Malcolm, 371 F.Supp. 594 (S.D.N.Y. 1974), affirmed and remanded 507 F.2d 333 (2d Cir. 1974), which dealt with the Manhattan House of Detention (pejoratively and popularly referred to as the "Tombs"):

Dr. Menninger's observation that ". . . my profession [psychiatry] considers it almost part of its ten commandments to say that everyone should have some exercise daily" finds its counterpart in the rule that "[c]onfinement for long periods of time without the opportunity for regular outdoor exercise does, as a matter of law, constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution." Sinclair v. Henderson, 331 F.Supp. 1123, 1131 (E.D.La.1971), quoted with approval in Palma v. Treuchtlinger, 72 C. 1653 (E.D.N.Y., March 5, 1973).

The right of a prisoner to reasonable physical exercise is fundamental. Where necessary, courts have required structural alterations to provide the required space, see, e. g., Hamilton v.

Love, *supra*, 328 F.Supp. at 1193 and decree of June 22, 1971, Par. 7D; Wayne County Inmates v. Wayne County Board of Commissioners, Civ. #173–217 Circuit Court, Wayne County, Michigan, July 28, 1972, at 25–6, and have ordered that particular periods of exercise be made available, Hamilton v. Landrieu, *supra* [D.C.], 351 F.Supp. [549], at 550, or that outdoor exercise areas be created, Taylor v. Sterrett, *supra* [D.C.], 344 F.Supp. [411], at 422. See also, Holland v. Donelon, Civ. No. 71–1442 (E.D.La., June 6, 1973) at 12 and cases cited, Brenneman v. Madigan, *supra* [D.C.], 343 F.Supp. [128], at 135, 140; Conklin v. Hancock, *supra* [D.C.], 334 F. Supp. [1119], at 1122 and Jones v. Wittenburg, *supra* [D.C.], 330 F. Supp. [707], at 717.

The 50 minutes per week opportunity for exercise at MHD (even supplemented by other recreational programs) does not meet constitutional standards. *The difficulty of providing space for exercise in an urban institution is unacceptable as justification for the deprivation imposed on MHD inmates.* The jails in question in the cases cited were city facilities faced with the same difficulty.

The present administration of the Department is making admirable efforts to overcome the deficiencies in the existing program of physical exercise at MHD. Unfortunately, it appears unlikely that even the improved program will bring MHD up to constitutional standards. The plaintiffs are entitled to the relief necessary to achieve that objective. (emphasis added)

371 F.Supp. at 626–627.

In the instant case, not only have the city defendants failed to demonstrate "admirable efforts to overcome the deficiencies in the existing program of physical exercise," they have not demonstrated any efforts whatsoever. There is no existing program and there never has been any and the city defendants are now seeking to relieve themselves of that burden permanently for the future.

The Court finds that position untenable and unacceptable under the prevailing case law as enunciated above in Rhem v. Malcolm and the evidence in the record herein.

This conclusion is bolstered by the fact that at least 90% of the inmates in the Duval County Jail never leave their exceedingly cramped ten man cells, not even to eat meals. In addition, no light passes into the building because the windows are either opaque or translucent. Furthermore, the extremely poor ventilation and temperature control exacerbate an already dangerously unhealthy environment. The plaintiffs are treated as if they were "caged animals."

■ An additional consideration is the fact that the city defendants, by their own testimony, provide extensive outdoor recreation at the Jacksonville Correctional Institution, which houses sentenced prisoners. This creates a patent equal protection violation since one class of inmates incarcerated by the city defendants is clearly being treated much more harshly than another class. In addition, it is now well settled that ". . . the conditions for pretrial detention must not only be equal to, but superior to, those permitted for prisoners serving sentences for the crimes they have committed against society." Inmates of Suffolk County Jail v. Eisenstadt, 360 F.Supp. 676, 686 (D.Mass. 1973), affirmed 494 F.2d 1196 (1st Cir. 1974), quoting Hamilton v. Love, 328 F. Supp. 1182, 1191 (E.D.Ark.1971). *See also* Jones v. Wittenberg, 323 F.Supp. 93, 100 (N.D.Ohio 1971).

Therefore, the city defendants will be required to submit plans for the establishment of a recreation program, including outdoor exercise programs, as originally ordered.

## V. CONSTRUCTIVE WORK PROGRAM FOR REMUNERATION

The city defendants strenuously contest the requirement for the submission of a plan for the "establishment of a constructive work program, which shall include, for inmates not presenting secu-

rity risks, maintenance and other interior work at the jail for remuneration." Paragraph 1(f), page 13, of preliminary injunction of January 31, 1975.

■■ The plaintiffs do not strongly object to the deletion of this particular provision from the preliminary injunction, and this order will so provide. However, the Court wishes to emphasize that the deletion of this particular provision for purposes of preliminary injunctive relief is not to be considered a ruling on the merits of such a provision for purposes of permanent injunctive relief.

## VI. SECTION 951.04 OF THE FLORIDA STATUTES

Section 951.04 of the Florida Statutes provides as follows:

When a prisoner is discharged by reasons of having served his sentence, or upon receiving a pardon or parole, he shall be furnished transportation, or its equivalent in money, back to the place from which he was sentenced, together with the sum of five dollars, where the sentence is for four months or more, and *the sum of three dollars where the sentence is for a less period than four months, in addition to his transportation,* all of which shall be paid out of the general fund of the county in which he was convicted, and for the purpose of carrying out the provisions of this chapter, the clerk of the board of county commissioners of each county shall, under the directions of said board, issue a check on said fund with which to pay these amounts to the prisoners being discharged at the time of their release. (emphasis added)

On the face of it, the statute provides that all prisoners serving sentences in the Duval County Jail would be entitled to at least three dollars upon their discharge from confinement. However, an opinion of the Attorney General of the State of Florida, Op. Atty. Gen., 067–37, July 6, 1967, interprets this section to mean that this section does not require that the discharge fees therein mentioned be paid to county convicts who have served their sentences in the county jail and have not worked upon the roads, bridges or other public works of the county. The opinion reasoned as follows:

A study of the history of this statute shows that it has always been intended by the legislature to apply to county convicts who have been put to labor. Sections 951.04 [951.01]–951.04, F.S., were all contained in one section of C.G.L., 1927, viz., § 8549, which had been enacted for the purpose of providing for putting county convicts to labor on roads, bridges and other public works of the county. Since the provision for discharge fees was part and parcel of a law having this one purpose, it is my opinion that, despite the generality of its wording when viewed in isolation, it was intended by the legislature to apply only to county convicts who have thus been put to labor.

The city defendants contend that the foregoing opinion, in the absence of any contrary authority, should be binding on this Court. Although this Court views such an opinion as merely persuasive, and not binding authority, an independent analysis of the statute, as originally compiled in 1927, results in the same conclusion. Sections 951.01–951.04 of the Florida Statutes, as they are currently in force, do not differ in substance from the statute as originally compiled in one section in 1927. Comp. Gen.Laws 1927, § 8549. The theme that emerges from the various sections is the intent to put sentenced county prisoners to work on the roads, bridges and other public works of the county with the attendant considerations of providing food, clothing, medical attention, etc., and of providing for prison inspectors to inspect county prison camps and municipal detention facilities. Furthermore, the legislature has not chosen to change the statute since 1967 in the face of the attorney general's opinion. Therefore, this Court must conclude that the opinion is in accord with the intent of the

legislature. In the absence of any contrary authority, this Court is loathe to ignore the attorney general's opinion. Had the legislature wished to contravene the attorney general's opinion since 1967, it had ample opportunity to do so.

Therefore, that portion of the preliminary injunction will be deleted.

Therefore, it is

Ordered:

1. The city defendants' motion to modify injunction and/or order, filed herein February 6, 1975, is hereby granted to the limited extent set forth below.

2. The preliminary injunction issued herein January 31, 1975, is hereby modified as follows:

(a) Paragraph 3, section I, at page 3, shall be modified to the extent that the city defendants will be allowed until April 1, 1975, to keep an inmate in a holding cell up to four hours. The city defendants will be allowed until May 1, 1975, to keep an inmate in a holding cell up to three hours. After May 1, 1975, no inmate shall be kept in a holding cell for longer than two hours. In addition, that paragraph is further modified to the limited extent that no more than fifteen (15) inmates can be housed in post-booking cell 1–H at any one time.

(b) By stipulation of the plaintiffs and the city defendants, which this Court hereby adopts and confirms, paragraph 5 of section I, at page 4, is hereby modified to the extent that each inmate who does not have such items with him when he enters the jail, shall be furnished, within 24 hours of being booked, soap, toothbrush, toothpaste, and within 24 hours with shaving gear so as to be able to maintain good personal hygiene.

(c) By stipulation of the plaintiffs and the city defendants, which this Court hereby adopts and confirms, paragraph 6 of section VI, at page 10, is hereby modified to reflect as follows:

Any inmate requiring medical isolation due to a potentially infectious disease, mental illness, convalescent care or any other ailment requiring medical isolation, shall not be housed in the Duval County Jail, Jacksonville Correctional Institution or Fairfield House until such time as adequate and appropriate facilities are available therein.

(d) By stipulation of the plaintiffs and the city defendants, which this Court hereby adopts and confirms, paragraph 5 of section IV, at page 8, is hereby modified to reflect as follows:

No inmate shall be placed in an "isolation cell" except:

(i) for disciplinary reasons and then only in the event of compliance with the provisions of this Court's order and preliminary injunction dated January 31, 1975, with respect to due process in disciplinary proceedings.

(ii) for medical reasons and then only in the event of written order of the jail doctor and/or head nurse and then only with respect to those isolation cells located on the mezzanine floor of the Duval County Jail and numbered M–9–1, 2, 3, 4, 5.

(iii) for individual request reasons and then only in the event the inmate making such request has made such request in writing, which written request shall become a permanent part of the inmate's record and further that in the event said inmate requests to be moved from isolation said request shall be immediately honored.

(e) By stipulation of the plaintiffs and the city defendants, which this Court hereby adopts and confirms, paragraph 10 of section VI, at page 10, is hereby modified to reflect as follows:

No inmate shall be transported from the jail to a hospital or returned in any vehicle other than an ambulance or other adequately equipped emergency vehicle except to a hospital for the purpose of keeping a previously arranged appointment in the clinic areas of said hospital and then only with the written consent of the jail doctor and/or a jail nurse, to evidence the fact that transportation in an ambulance or other adequately equipped

emergency vehicle is not medically required.

(f) Paragraph 1(f) of section IX, at page 13, is hereby deleted.

(g) The section relating to Fla.Stat. § 951.04, at page 17, is hereby deleted, insofar as that section requires payment to sentenced prisoners upon release.

(3) Points 3, 4, and 6 of the aforesaid motion are hereby denied to the extent that such a denial is consistent with the foregoing opinion.

(4) Further ruling upon points 8 and 9 is hereby deferred upon submission by the city defendants of a report by officials of the Law Enforcement Assistance Administration of the United States Department of Justice. The plaintiffs are allowed 10 days after the submission of said report within which to file written comments on or objections to said report.