Richard Franklin MILLER et al.,
Plaintiffs-Appellees,

v.

Dale CARSON, etc., et al., Defendants,

Louie L. Wainwright, Director, Division
of Corrections, Defendant-Appellant,

T. Edward Austin, Amicus Curiae.

No. 75–4464.

United States Court of Appeals,
Fifth Circuit.

Nov. 23, 1977.

See also, 5 Cir., 563 F.2d 741.

Donna H. Stinson, Richard A. Hixson, Asst. Attys. Gen., Dept. of Legal Affairs, Tallahassee, Fla., William L. Coalson, William Lee Allen, Jacksonville, Fla., for defendant-appellant.

William J. Sheppard, Jacksonville, Fla. (Court-appointed), for plaintiffs-appellees.

Before TUTTLE, WISDOM, and COLEMAN, Circuit Judges.

WISDOM, Circuit Judge:

Detainees, incarcerated in the Duval County Jail in Jacksonville, Florida, brought this class action to improve conditions in the jail. The plaintiffs-appellees alleged that the defendants, county and state officials responsible for the operation of the jail, violated the detainees' civil rights, under 42 U.S.C. §§ 1983, 1985, and 1986, their constitutional rights, under the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments, and certain statutory rights under Florida law. They asked for declaratory and injunctive relief, and for damages. Louie L. Wainwright was sued individually and in his capacity as Secretary of the Florida Department of Offender Rehabilitation.[1] The district court ruled that the case was properly brought as a class action, and defined the class as consisting of "all persons, male and female, who are presently or in the future will be incarcerated in the Duval County Jail".[2]

On October 25, 1974, the plaintiffs filed a motion for partial summary judgment contending that the Secretary had failed to promulgate rules, as directed under § 951.23 Fla.Stat. (1973),[3] prescribing jail standards for (a) the maximum number of prisoners

---

1. At the beginning of this litigation, the Secretary of the Department of Health and Rehabilitative Services and the Director of the Division of Corrections, divided the duties in Fla.Stat. § 951.23(2)–(3), quoted note 3. By the time of this appeal, Louie L. Wainwright, Secretary of the Department of Offender Rehabilitation, had inherited the duties of both those offices. Wainwright was substituted for William J. Page, Jr., who had been substituted for O. J. Keller, Secretary of the Department of Health and Rehabilitative Services at the time the district court issued its injunction. We shall treat Wainwright as having had all the statutory duties throughout the litigation.

2. The court divided the class into three subclasses:

(a) Subclass 1 shall consist of all those inmates, male and female, who are presently or in the future will be incarcerated in the Duval Jail awaiting trial in the County and Circuit Courts of Duval County, Florida.

(b) Subclass 2 shall consist of all those inmates, male and female, who are presently or in the future will be incarcerated in the Duval County Jail following conviction in the County and Circuit Courts of Duval County, Florida.

(c) Subclass 3 shall include all those federal prisoners who are presently or in the future will be incarcerated in the Duval County Jail awaiting trial in the federal court or awaiting transfer to a federal institution.

3. Fla.Stat. § 951.23:

(2) Rules prescribing standards and requirements.—[The Secretary of the Department of Offender Rehabilitation] is authorized and directed to adopt rules and regulations prescribing standards and requirements with reference to:

(a) The construction, equipping, maintenance, and operation of county and municipal detention facilities;

(b) The cleanliness and sanitation of county and municipal detention facilities; the number of county and municipal prisoners who may be housed therein per specified unit of floor space; the quality, quantity, and supply of bedding furnished to such prisoners; the quality, quantity, and diversity of food served to them and the manner in which it is served; the furnishing to them of medical attention and health and comfort items; and the disciplinary treatment which may be meted out to them.

(c) The confinement of prisoners by classification, such rules being established with the participation of "local detention units" and the final approval of the [department of offender rehabilitation], and providing, whenever possible, for classifications which separate males from females, juveniles from adults, felons from misdemeanants, those awaiting trial from those convicted, and, in addition, providing for the separation of unusual prisoners, such as the mentally ill, alcoholic or narcotic addicts, sex deviates, suicide risks, and any other classification which the local unit and the [department] may deem necessary for the safety of the prisoners and the operation of the facility.

(3) Enforcement by [department of offender rehabilitation].—[The Secretary of the Department of Offender Rehabilitation] shall enforce such rules and regulations and shall designate personnel of the [department] to inspect all

subject to detention per unit of floor space within the facility; (b) the quantity, quality, and diversity of food served; and (c) the confinement of prisoners by classification. On November 8, 1974, the court granted the plaintiffs' motion, and made specific findings as to the unsanitary, overcrowded, and dangerous conditions in the jail and the lack of provision for confinement of prisoners by classifications. 392 F.Supp. 515; 401 F.Supp. 835. The court also found that Fla.Stat. § 951.23, authorizing and directing the Secretary of the Department of Offender Rehabilitation to adopt rules and regulations prescribing standards for the operation of detention facilities, imposed mandatory duties on the Secretary. The court enjoined the defendant from further violation of the statute and directed him to promulgate regulations that would comply with it. On February 5, 1975, the defendant, in response to the order, filed suggested regulations. On February 20 the plaintiffs filed an objection contending that the contents of the defendant's response did not comply with the terms of the court's order. After a hearing, the court found the proposed regulations inadequate and entered its order of October 28, 1975, again requiring the defendant to conform to the statute and to promulgate the necessary rules and regulations. The defendant Wainwright appeals from this order. He did not appeal from the original order of November 8, 1974.

In this appeal Wainwright, as a state official, contends that the district court erred in exercising pendent jurisdiction to decide that both his failure to promulgate regulations required by Fla.Stat. § 951.-23(2)–(3) and the regulation he later promulgated were in violation of that statute. We hold that the district court properly invoked its pendent jurisdiction to hear these state law claims in connection with

the plaintiffs' claim that Wainwright acted under color of law to deprive them of their federal constitutional rights. We certify the questions of state law to the Florida Supreme Court for decision under Florida's certification procedure.[4]

The local officials, the Sheriff of Duval County and others, have filed a separate appeal (No. 75–2729) challenging the relief ordered and the award of attorneys fees to the plaintiffs.

Conditions in the Duval County Jail were so deplorable that the district court, among other conclusions, held that the detainees were subjected to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. The facts are set out fully in the district court's opinions. 401 F.Supp. 835; 392 F.Supp. 515. They require but a brief summary here. The majority of persons held in the jail were detainees who were imprisoned not because of crimes they had committed but to assure their presence at trial. Many inmates, most of whom must be presumed innocent, were placed in holding cells, some of which were without water or toilet facilities, for up to eight days without bedding or a change of clothes. These cells were often so crowded that the inmates had to eat while standing because there was no room to sit. Sinks and commodes were filthy throughout the jail. Sometimes vomitus, urine, and feces were on the floor of the cells. Lighting and ventilation were poor. Medical care was grossly inadequate. Designed for 432 inmates, the jail usually held more than 100 over the stated maximum. Inmates were segregated racially in the holding cells. Pretrial detainees and juveniles were housed with convicted felons (some of them violent), mental cases, homosexuals, inmates with syphilis and gonorrhea. The court found: "In summary, the overall en-

---

county and municipal detention facilities in order to determine whether such standards and requirements are being met. Upon complaint filed by him in circuit court, he may be granted an injunction prohibiting the confinement of any county or municipal prisoner in any county or municipal detention facility which does not meet such standards and requirements.

4. Fla.Stat. § 25.031 (1974); Fla.App. Rules 4.61. See, e. g., *Lehman Bros. v. Schein*, 1974, 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215; *Martinez v. Rodriquez*, 5 Cir. 1968, 394 F.2d 156, opinion on certification, Fla.1968, 215 So.2d 305. .

vironment of the inmate housing areas of the Duval County Jail gives one the psychological feeling of being really trapped in a dungeon."

The plaintiffs' federal claim for declaratory and injunctive relief is primarily based on 42 U.S.C. § 1983. Section 1983 provides for actions in law and suits in equity against persons who, acting under color of state law, cause others to be subjected to the deprivation of constitutional rights. The plaintiffs contend that Fla.Stat. § 951.-23(2)–(3)[5] makes Wainwright at least partly responsible for the improper conditions of their confinement. The Florida statute "authorized and directed" Wainwright to make and enforce rules for jails throughout the state. The rules are to prescribe "standards and requirements with reference" to cleanliness, nutrition, medical care, classification of inmates, and the operation of the facilities in general. The statute allows him to file suit to enjoin confinement that does not comply with the rules he has adopted. The plaintiffs alleged that Wainwright's failure to promulgate rules caused inmates to be deprived of their right to due process of law, equal protection, and their right not to be punished cruelly. After Wainwright promulgated rules in response to an order of the district court entered in 1974, the court found that they did not comply with the statutory requirements,[6] and ordered him to resubmit rules that would comply with the law. As noted, Wainwright appeals only from this second order of October 28, 1975.

**5.** Quoted note 3.

**6.** For instance, where the statute required that Wainwright adopt a rule about "the number of county and municipal prisoners who may be housed . . . per specified unit of floor space," the rule he adopted provided that the Secretary "shall ascertain the maximum number of prisoners, of whatever classifications, that can be properly housed in any detention facility" without reference to feet of floor space or to the Duval County Jail. The district court found that this rule did not comply with the statute.

**7.** Wainwright correctly contends that the violation of state law by a state official, without

## I.

### Pendent Jurisdiction

For a federal court to have the power to hear a state claim under the doctrine of pendent jurisdiction, the court must have before it a substantial federal claim, and the state and federal claims must "derive from a common nucleus of operative fact". *United Mine Workers v. Gibbs*, 1966, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 227–28. In addition, the federal and state claims must be such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding". *Id.* 383 U.S. at 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d at 228.

Wainwright contends that the plaintiffs' claims against the state officials are based solely on state law and are distinct from any federal claim against county officials. We find that the claims against the defendant Wainwright relate both to federal and state law. And the federal claim against him is substantial.[7] The fact that Wainwright shares responsibility for the operation of the jail with county officials does not relieve him of liability cognizable under § 1983 because of the due process and equal protection clauses of the Fourteenth Amendment and the cruel and unusual punishment clause of the Eighth Amendment. In *Rhem v. Malcolm*, S.D.N.Y.1974, 371 F.Supp. 594, 635–36, *modified*, 2 Cir. 1974, 507 F.2d 333, *opinion after remand*, 2 Cir. 1975, 527 F.2d 1041, 1042 n.2, state officials were held liable along with local officials for constitutional deprivations

more, is not a violation of the federal right to procedural due process. *Screws v. United States*, 1945, 325 U.S. 91, 108–09, 65 S.Ct. 1031, 89 L.Ed. 1495; *McDowell v. Texas*, 5 Cir. en banc 1972, 465 F.2d 1342. 42 U.S.C. § 1983 becomes applicable only when someone violates a "specific constitutional guarantee" under color of state law. *Paul v. Davis*, 1976, 424 U.S. 693, 700, 96 S.Ct. 1155, 47 L.Ed.2d 405, 413. But when a state official's violation of state law causes the imposition of cruel and unusual punishment, a federal cause of action arises under § 1983. *Shields v. Hopper*, 5 Cir. 1975, 519 F.2d 1131 (dictum).

in the Manhattan House of Detention. New York law gave them the responsibility to inspect local jails, aid in their administration, and close unsafe jails. See also *Gates v. Collier*, 5 Cir. 1974, 501 F.2d 1291 (upholding injunctive relief against the Governor of Mississippi and the State Penitentiary Board as well as the prison warden); *United States ex rel. Larkins v. Oswald*, 2 Cir. 1975, 510 F.2d 583, 589 (holding the New York State Corrections Commissioner liable for money damages along with the prison warden when the former was "chargeable with knowledge" of the cruel and unusual punishment of one prisoner). To hold this claim against Wainwright insubstantial we would have to say that the state did not give him enough power to remedy the unconstitutional conditions imposed on inmates of the Duval Jail. The broad language of the Florida statute and its obviously remedial objectives prevent our construing his statutory responsibility so narrowly.[8]

We find also that the state and federal claims here are such that the plaintiffs would be expected to try them all in one judicial proceeding and that they meet the *Gibbs* test that there be a common nucleus of operative fact. Once federal constitutional violations were established, as they were here, the basic question in the federal claim was the extent of Wainwright's duty under federal law; in the state claim, his duty under the Florida statute. These two questions are similar. Many of the matters made subject to Wainwright's regulation have also been the source of federal constitutional litigation. See, e. g., *Gates v. Collier*, N.D.Miss.1972, 349 F.Supp. 881, 887–88, *aff'd*, 5 Cir. 1974, 501 F.2d 1291 (medical attention, maintenance of physical facili-

ties); *Taylor v. Sterrett*, 5 Cir. 1974, 499 F.2d 367, 368–69, *cert. denied*, 1975, 420 U.S. 983, 95 S.Ct. 1414, 43 L.Ed.2d 665 (modes of disciplinary treatment). The plaintiffs would hardly have been expected to litigate the requirements of state law in one proceeding and the requirements of federal law on the same matter in another. Not only would a parallel state court trial have been duplicative, it would have been meaningless if a federal court had found that the Constitution required a higher duty of Wainwright.

In *Taylor v. Sterrett*, on which the district court relied in finding pendent jurisdiction, we faced a similar situation. In that case the district court, exercising pendent jurisdiction in connection with federal constitutional claims, ordered local officials to comply with Texas laws regulating prison facilities. We affirmed that use of pendent jurisdiction. As Judge Coleman stated for the Court,

> It could hardly be expected that a United States District Court, in the exercise of appropriate pendent jurisdiction, would decline the enforcement of laws which the state, of its own volition, had enacted for the improvement of prison conditions within its jurisdiction.

499 F.2d at 368.

Here, as in *Gibbs* and *Taylor*, the judicial power to hear a pendent claim results when the state and federal claims "derive from a common nucleus of operative fact", and the claims are such that the court "would ordinarily be expected to try them all in one judicial proceeding". *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138.

The appellants further contend that, should we decide that the district court had the constitutional power to rule on the state

---

**8.** That the abuse of authority alleged here is a dereliction of duty rather than affirmative act makes no difference. The Civil Rights Act of 1871 was partly aimed at constitutional deprivation through abuse and nonuse of authority by state officials. *See* Developments in the Law—Section 1983 and Federalism, 90 Harv.L. Rev. 1133, 1153–54 (1977):

> Southern resistance to Reconstruction continued and by early 1871 there was overwhelming evidence that through tacit com-

plicity and deliberate inactivity, state and local officials were fostering vigilante terrorism against politically active blacks and Union sympathizers.
> A full reading of the debates compels the conclusion that the Act was aimed at least as much at the *abdication* of law enforcement responsibilities by Southern officials as it was at the Klan's outrages.

(Emphasis supplied) (footnotes omitted).

law claims, we should hold that the court abused its discretion in exercising that power. We find, however, that the trial court exercised its discretion properly. The justification for the doctrine of pendent jurisdiction lies

> in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims . . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. . . . Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong.

*United Mine Workers v. Gibbs*, 383 U.S. at 725–26, 86 S.Ct. at 1139.

State issues did not predominate in the trial of this case. The trial court had to make an initial factual determination that jail conditions warranted judicial action in the suit against Wainwright as well as in the suit against the local officials of Duval County. In addition, had the district court declined jurisdiction, it would not have reached the question whether Wainwright violated 42 U.S.C. § 1983 and the Fourteenth Amendment in failing to promulgate the required standards. These state claims were so closely tied to questions of federal policy that the federal court properly heard them.

## II.

### Appealability

■ The plaintiffs argue that the district court's order to resubmit rules is not appealable. We find this contention without merit. The order continues an injunction and is therefore appealable under 28 U.S.C. § 1292(a). *See Boson v. Rippy*, 5 Cir. 1960, 275 F.2d 850 (per curiam); 9 Moore's Federal Practice, ¶ 110.20[2] at 238–39 (1975); 16 Wright, Miller, Cooper, & Gressman, Federal Practice & Procedure, § 3924 at 67 (1977).

## III.

### Certification

■ Although the certification process may tend to delay litigation, the appellant and the appellees have asked us to certify the questions of Florida law to the Florida Supreme Court—if we find, as we have, that the trial court had jurisdiction and that its order was appealable. This agreement by the parties overcomes reservations as to further delays in effecting prison reform in Duval County Jail. After we receive the answer to the certificate, no other question will be before the Court.

We issue the following certificate.

### STATEMENT OF FACTS

The facts giving rise to the following certified question arise from a construction of Section 951.23(2), Florida Statutes (1973). The United States District Court for the Middle District of Florida, Jacksonville Division, construed Section 951.23(2), Florida Statutes to require O. J. Keller, at the time the duly appointed Secretary of the Department of Health and Rehabilitative Services for the State of Florida, to adopt rules and regulations prescribing standards and requirements to be complied with in the operation of the Duval County Jail, as well as all the county and municipal detention facilities in the State of Florida, and the care and maintenance of the inmates thereof. Thereafter, by consent of the parties, Louie L. Wainwright, Secretary, Florida Department of Offender Rehabilitation, was substituted as defendant as the result of Chapter 75–48 and 49, Laws of Florida. *See, also,* Chapter 77–120, Laws of Florida.

Defendant Wainwright is the appellant and plaintiffs below, who are inmates of the Duval County Jail, are appellees.

Defendant Wainwright submitted rules and regulations as required by the District Court's order and plaintiffs objected to the adequacy of said regulations. The plaintiffs' objections in several respects have since been cured by subsequent modifications of some of the pertinent rules and regulations. There remains one rule submitted by defendant Wainwright to which plaintiffs' objection is still applicable.

Section 951.23(2), Florida Statutes (1973), provides in pertinent part:

"(2) Rules prescribing standards and requirements—The secretary of health and rehabilitative services is authorized and *directed* to adopt rules and regulations prescribing standards and requirements with reference to:

\* \* \* \* \* \*

"(b) The cleanliness and sanitation of county and municipal detention facilities; *the number of county and municipal prisoners who may be housed therein per specified unit of floor space* ; the quality, quantity and supply of bedding furnished to such prisoners; the quality, quantity, and diversity of food served to them and the manner in which it is served; the furnishing to them of medical attention and health and comfort items; and the disciplinary treatment which may be meted out to them." (emphasis added)

In response to the aforesaid order of the District Court, defendant Wainwright promulgated the following rule purporting to comply with the foregoing emphasized provision contained in Section 951.23(2), Florida Statutes (1973):

"The Secretary shall ascertain the maximum numbers of prisoners, of whatever classifications, that can properly be housed in any detention facility. Having ascertained such maximum numbers, he shall notify in writing the Officer-in-Charge of such facility and the Board of County Commissioners or City Commission where the facility is located of such maximum numbers. The Officer-in-

Charge of the facility and the Board of County Commissioners or City Commission shall thereafter insure that the actual prisoner populations do not exceed such maximum numbers; provided, however, that the Secretary may authorize exceptions or modifications when in his opinion there is good cause for such action." Rule 33–8.02(10), *Florida Administrative Code.*

## QUESTION CERTIFIED

WHETHER THE RULE PROPOSED BY THE SECRETARY OF THE FLORIDA DEPARTMENT OF OFFENDER REHABILITATION COMPLIES WITH THE REQUIREMENTS OF SECTION 951.23(2)(b), FLORIDA STATUTES.