Bernard C. JERRY, Appellant,

v.

Anthony Mastro FRANCISCO, Warden, et al.; Parker Bronson, Jerry Lavelle and Robert Apple.

No. 78–2645.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) May 1, 1980.

Decided Oct. 14, 1980.

had promised and never ruled on the plaintiff's request for transportation of his witnesses—witnesses who could have provided the critical evidence she found lacking—we will reverse in part and affirm in part.

Bernard C. Jerry, appellant appearing pro se.

Robert F. Palmquist, Monaca, Pa., James A. McGregor, Jr., Beaver, Pa., for appellee.

Before ADAMS, VAN DUSEN and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

The plaintiff brought this suit pursuant to 42 U.S.C. § 1983 seeking injunctive relief and money damages from the warden and three prison guards at the Beaver County Jail in Pennsylvania (the Jail), where he had been previously imprisoned. The defendants were alleged to have subjected him to cruel and unusual punishment, in violation of the eighth amendment of the Constitution, and to have deprived him of the free exercise of his first amendment rights. The magistrate, whose findings of fact and conclusions of law were adopted by the district court, found for the defendant on the damage claims principally because the plaintiff had failed to proffer evidence that any of the defendants were responsible for or were aware of the constitutional violations. During the hearing, however, the magistrate had assured the plaintiff that she would appraise him of whether witnesses that he had unsuccessfully sought to have transported to the hearing were needed to prove his case. Because the magistrate failed to supply the information she

I.

Bernard C. Jerry was committed to the Jail in Pennsylvania on February 13, 1977, while he was awaiting trial on state homicide charges. After he had been transferred from the Jail on March 29, 1977, he brought suit pro se against its Warden, Anthony Mastro Francisco, and three guards, Parker Bronson, Jerry LaValle, and Robert Apple, for violation of his constitutional rights.

During the pretrial stage the magistrate requested a summary of witnesses Jerry would call,[1] to which he responded with "an evidentiary offering of witnesses to be called at trial." This document contained the names and addresses of ten witnesses broken down into two groups of five. The first five witnesses were offered for "Summary testimony to above mentioned will attest to law books." The second group "will attest to dental, hygienic, church and overcrowded conditions at jail." Jerry also requested certain materials from the defendants. The document concluded with the request that "subpoenas be issued to above named and documents requested be available for trial." There is no evidence in the record that the magistrate ever ruled on this pretrial request for witnesses.

On August 15, 1978, Jerry appeared without counsel at a hearing held before the magistrate to consider his claim. According to Jerry's testimony, which was not rebutted by the defendants,[2] he was subjected to numerous debilitating conditions during his

---

1. The procedure of requiring prisoners to summarize the anticipated testimony of incarcerated witnesses they wish to call, in order to determine whether transportation to court at public expense is justified, conforms with the recommendations contained in The Federal Judicial Center's Prisoner Civil Rights Committee (Aldisert, J., Chairman), *Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts*, 76–78 (Jan. 1980).

2. The defendants presented no evidence at the hearing. After the plaintiff's case had been presented, they moved for dismissal on the ground that there was no evidence that they were personally aware of or responsible for any constitutional violation suffered by the plaintiff. After the magistrate informed them that she was powerless to dismiss absent approval of the district court, they rested their case without presenting any evidence.

incarceration in the Jail. The Jail was overcrowded and, when he first arrived, he was confined with another prisoner in a hospital room initially without mats or covers, with "vomit ... all over the place." Tr. at 14. When Jerry was moved to a regular cell, he was forced to eat his meals either in his cell next to an open faced toilet or on a nearby tier. The mattress on which he slept emitted a nauseous stench, and he twice developed body lice. Jerry also testified that he had sought medical care when he first arrived at the prison, and later dental care, but never received any attention. In all of the instances of allegedly inadequate care and unhealthy conditions, however, Jerry did not specifically identify any person at the Jail who knew about, was specifically responsible for, or to whom he had spoken about the conditions.

In addition to his discussion on the physical condition of the Jail, Jerry also testified concerning restrictions on his receipt of books and free exercise of religion. On or about February 19th, 1977, a friend, Ms. Charlene Jones, was prevented by defendant Parker Bronson from delivering two law books to Jerry. The deprivation proved short–lived, however, for Jones brought the books back a week later, and they were delivered to Jerry.[3] Jerry stated finally that he had asked an unnamed guard about the arrangements for religious worship in the prison when he first arrived, and was told there were none. Toward the end of Jerry's testimony at the hearing, Jerry made another request that at least two of his witnesses then imprisoned be transported to testify. He stated:

And while I am on that, I would like to make a note, before I forget, that I had two witnesses that are down at the Western where I am at, and I think that there would have been no difficulty for them to come up with me and testify to things that occur, as corroboration.

Tr. at 15. The magistrate said that she would defer her ruling on the second request for transportation of witnesses, assuring Jerry that she would call them if they were needed.

THE COURT: As I explained to you in our pretrial conference, if you feel there are witnesses that you really need, after you have presented your case, you can tell me who they are and what you feel they would testify to, and I will determine whether you really need their testimony; and if so, I will make an attempt to get them in here. But that's after you have proved–after you have put in all the other evidence that you are able to produce, and I will determine whether you need their testimony.

*Id.*

At the conclusion of Jerry's presentation, however, when Jerry stated that he had no other witnesses, the magistrate did not inform him, as she had promised, whether his other two witnesses still in prison were needed, or rule on his previous motion that they be transported to the hearing. When Jerry stated that he had no further witnesses, the magistrate merely asked the defendants to present their case. The defendants waived their right to offer any evidence to rebut Jerry's testimony, resting their case on Jerry's failure to link them personally to any constitutional violation.

The magistrate subsequently recommended a finding for the defendants on all claims. On the eighth amendment claim, she found that Jerry had provided no evidence that his physical ailments were serious or that any defendant was responsible for or even aware of his physical ailment or the prison conditions. On the first amendment claim the failure to provide a religious advisor was found to be constitutional because Jerry had not requested that he be permitted to see a specific person. There was also no constitutional obligation to provide religious advisors for prisoners, such as Jerry, who were in a particular prison for a short period of time. Indeed, according to the magistrate, even if the refusal had been unconstitutional, Jerry, as in the eighth amendment claim, had failed to provide any

---

3. The two other witnesses who testified for Jerry, Charlene Jones and Jacqueline Grace, also testified that Bronson had prevented the delivery of the books.

evidence that the defendants were aware of or responsible for the conditions.

Bronson's refusal to allow law books, although unconstitutional as a deprivation of his first amendment rights, was held to have occurred at a time when no court had definitively established such a responsibility. Thus, the magistrate found that his action was taken "in good faith with reasonable grounds for this belief." The week long deprivation was held not to contravene his constitutional right to access to the court, moreover, because the books were forwarded to Jerry a week later and any infringement was de minimis. Finally, the magistrate recommended dismissal of the injunctive claims on the ground that they had become moot when Jerry had been transferred from the Jail before suit was brought.

The district court subsequently adopted the findings of fact and conclusions of law of the magistrate, and this appeal followed.

## II.

■ We agree that Jerry's injunctive claims are moot, since he no longer is in the Jail and there is no evidence that he will be transferred back to the Jail. *See Preiser v. Newkirk*, 422 U.S. 395, 403, 95 S.Ct. 2330, 2335, 45 L.Ed.2d 272 (1975). Because of the failure of the magistrate to consider Jerry's request for transportation of witnesses, however, we will reverse the dismissal of Jerry's claims for damages under the first and eighth amendment.

■ Under 28 U.S.C. § 2241(c)(5) a federal court has the discretionary authority to issue a writ of habeas corpus ad testificandum to secure the appearance of a state or federal prisoner in federal court.[4] In exercising its discretion in the analogous context of a prisoner's motion to secure his own appearance to testify, it has been required that a district court weigh "the interest of the plaintiff in presenting his testimony in person against the interest of the

state in maintaining the confinement of the plaintiff–prisoner." *Stone v. Morris*, 546 F.2d 730, 735 (7th Cir. 1976). Thus, the court should

take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which *the presence of a particular inmate* would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition. *See Moeck v. Zajackowski,* [541 F.2d 177 (7th Cir. 1976)].

The interests of the inmate in presenting his testimony in person rather than by deposition subsumes other factors or considerations such as whether the trial is to be to the court or to a jury, whether the prisoner has any other witnesses to call at trial or whether, as here, the prisoner is the only person who can render testimony consistent with the allegations of his complaint, and whether the defendants themselves plan to take the witness stand. *Id.* at 735–36. *See also Holt v. Pitts*, 619 F.2d 558, 561 (6th Cir. 1980) (requiring application of these criteria); *Heidelberg v. Hammer*, 577 F.2d 429, 431 (7th Cir. 1978) (same). At least one court has made an additional comment, with which we concur, that "[t]he court should not base the exercise of its discretion on the probability that a prisoner will succeed on the merits of the claim or a presumption that the correctional institution has acted correctly with regard to the prisoner's complaint." *Ballard v. Spradley*, 557 F.2d 476, 481 (5th Cir. 1977).

We believe that the same considerations must be weighed in determining whether a writ of habeas corpus ad testificandum should be issued to secure the appearance of

---

4. Section 2241(c)(5) states:
   (c) The writ of habeas corpus shall not extend to a prisoner unless—
   (5) It is necessary to bring him into court to testify or for trial.

an incarcerated non–party witness at the request of an incarcerated plaintiff. A district court will be reversed when its refusal to issue the writ constitutes an abuse of its discretion in weighing these criteria. *See United States v. Owen*, 580 F.2d 365, 368 (9th Cir. 1978); *Ballard v. Spradley*, 557 F.2d at 480–81; *Cook v. Bounds*, 518 F.2d 779, 780 n.1 (4th Cir. 1975.)

■ In the instant case, however, the magistrate, and by adoption the district court, did not even exercise its discretion, even though the plaintiff Jerry had made two prior motions that witnesses be subpoenaed and the magistrate assured him that she would act on these motions after he had presented his case. The witnesses *could* have provided evidence on the severity of plaintiff's physical condition, on defendants' knowledge of alleged constitutional violations, or on the specificity of plaintiff's requests–evidence which the magistrate found lacking when she recommended dismissal of the damage claims. It was clearly error to fail to act on the motion and exercise the discretion.

To be sure, we do not hold at the present time that it necessarily would have been an abuse of discretion for the magistrate to deny the motion after considering what evidence plaintiff sought to present through his witnesses. The testimony of the witnesses might have provided no significant information, or, alternatively, production of affidavits might have adequately reconciled the interests of the government and individual plaintiff. Rather, we only hold that it was error for the magistrate not to *consider* what evidence these witnesses were to provide, and exercise its discretion. *See Stone v. Morris*, 546 F.2d at 735.

### III.

We will therefore reverse the decision of the district court finding for the defendants on the damage claims and will affirm its decision on injunctive relief. The district court may then consider whether plaintiff should be permitted to produce further witnesses on his behalf on both the first and eighth amendment claims in light of our decision.[5]

ADAMS, Circuit Judge, concurring.

While I agree that this matter should be remanded, I write separately for two reasons: first, in my view, an incorrect standard was applied in dismissing Bernard Jerry's claims against Warden Francisco; second, Jerry's motion to produce additional witnesses should be evaluated after a specific inquiry into the nature of the proffered testimony.

a.

Jerry complains that it was erroneous for his entire case to be dismissed, and also that his request for additional witnesses has never been considered. In finding for all the defendants on the ground that Jerry did not prove that they were responsible for or even aware of the alleged constitutional violations, the magistrate apparently did not distinguish between the guards and the warden. Nor did the magistrate separate Jerry's complaints about prison conditions and general religious worship policies, on the one hand, from his contentions regarding practices directed at him individually, on the other. While personal involvement or actual knowledge by the defendants of the need for medical attention is a prerequisite for § 1983 liability predicated on inadequate medical care, *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976), actual knowledge is not always required for other types of § 1983 violations. The liability of supervisory prison personnel under § 1983 turns on whether the prisoner complains about a sporadic incident, which may be beyond the control of a supervisor, or about general conditions and policies properly within the supervisory purview of the officer in charge of the prison.

While it may have been proper to find that the individual guards had no responsibility to Jerry for unsanitary or overcrowded conditions, it was not appropriate to

5. We agree with the views expressed by Judge Adams in Section A of his opinion and our differences, if any, are slight as to the views he expresses in Part B.

dismiss Jerry's claims against the warden on the ground that the warden was unaware of such conditions at the jail. Under Pennsylvania law, the warden is charged with taking care of the prisoners in a jail that is under his supervision, and he is also responsible for the daily operation of the facility.[1] Consequently, a warden cannot escape liability under § 1983 for conditions that allegedly violate the eighth amendment simply by disclaiming awareness of the state of the jail.[2] As Chief Judge Lord perceptively pointed out in *Santiago v. City of Philadelphia*, 435 F.Supp. 136 (E.D.Pa. 1977), while concluding that inmates in a city detention center had stated a cause of action against the Mayor and the City Managing Director for allegedly unconstitutional conditions of confinement and treatment, the "existence of general policies and practices within the supervisor's department can create constructive knowledge on his or her part of the alleged constitutional deprivation." Id. at 152. In my view, these considerations indicate that on remand the magistrate should ascertain whether the conditions alleged by Jerry amount to a violation of the eighth amendment. If it is determined that they do constitute such a violation, the warden may be subject to liability under § 1983 by virtue of his responsibility for the operation of the jail.

On remand, I believe that the magistrate should also reevaluate Jerry's first amendment claim. Jerry testified that a guard informed him that there were no arrangements for religious worship in the jail. The guard's response suggests that there was an institution–wide practice in the facility of not providing religious outlets for the prisoners. Thus, supervisory personnel, such as the warden, may be held responsible in this regard even though they were not personally aware that Jerry had requested a religious advisor, for "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First ... Amendment ...." *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1082, 31 L.Ed.2d 263 (1972). It was also improper to dismiss Jerry's first amendment claim on the ground that he had failed to request a *specific* religious advisor. When presented with the guard's response that there were no provisions at the jail for religious observance, it is hardly surprising that an inmate would not press his inquiries by specifically requesting to see a particular person.

b.

Remand is also in order because, upon explicit consideration of Jerry's request for additional witnesses, it may appear that their testimony would remedy the defects in proof that warranted dismissal of plaintiff's case. The magistrate found that the testimony submitted by Jerry failed to support a cause of action because of a lack of evidence connecting the defendants with the alleged violations. As pointed out above, this would be a flaw warranting dismissal only with respect to the defendant guards, for whom personal knowledge is a prerequisite to liability. Therefore, in determining whether Jerry should be afforded an opportunity to present the testimony of the supplemental witnesses, the trial court should inquire whether, in this particular case, these witnesses are prepared to supply information bearing on the guard's knowledge of the conditions at the jail or of Jerry's physical ailments.

In explicitly ruling on Jerry's motion for additional witnesses, the magistrate and the district court should be sensitive to the fact that because Jerry is proceeding pro se, his arguments should be construed liberally, rather than literally. The admonition of *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), that pleadings by pro se plaintiffs should receive generous consideration, would seem to apply to Jerry's attempts to offer evidence, as well. It does not appear that he fully comprehended his evidentiary burden, the relationship between his pleadings, which named individual defendants, and the need for proof at

---

1. Pa.Stat.Ann. tit. 61, § 409 (Purdon).

2. See *DiMarzo v. Cahill*, 575 F.2d 15 (1st Cir. 1978); *Miller v. Carson*, 563 F.2d 757 (5th Cir. 1977).

trial, or the specific substantive reasons for which he might need additional testimony. Accordingly, the magistrate and the district court on remand, as I see it, should not confine their examination to Jerry's initial offer of proof, but rather should specifically inquire whether the witnesses could attest to knowledge by the defendant guards of the alleged transgressions. If Jerry indicates that the additional testimony could not furnish the crucial link, then denial of the motion for additional witnesses would appear to be in order, for he would not be able to surmount the first hurdle of proving an actionable claim against the guards.

Should Jerry be able to demonstrate that the additional witnesses may shed some light on the issue of defendants' knowledge, the court should then inquire, I believe, whether the witnesses could offer testimony that would bolster the plaintiff's substantive allegations. This is so because the magistrate also found that Jerry's proof was insufficient to establish that constitutional violations had occurred, whether or not the guard defendants were aware of them. If it appears that the additional witnesses might remedy either of the specified deficiencies in the proof, the district court, in my view, should grant Jerry's motion for the subpoenaing of such witnesses.