PERKINS STATE BANK, a Florida
Banking Corporation,
Plaintiff–Appellee,

v.

John CONNOLLY et al.,
Defendants–Appellees,

The Hanover National Bank of Wilkes–
Barre, Defendant–Appellant.

No. 78–3480.

United States Court of Appeals,
Fifth Circuit.

Dec. 19, 1980.

Lansing J. Roy, Gainesville, Fla., for defendant–appellant.

James E. Clayton, Gainesville, Fla., for John Connolly.

William G. O'Neill, Eugene A. Wiechens, Ocala, Fla., for Perkins State Bank.

Before FAY, KRAVITCH and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

This suit began as an interpleader action but was soon expanded by counterclaims and cross–claims to include a full range of actions arising out of an allegedly forged endorsement of a cashier's check. These claims sought to fix liability for the proceeds of the check (most of which had disappeared) in the absence of the forger (who had died). No evidence was presented to dispute the fact of the forgery, and the district court rendered summary judgment on all claims. The court found that the drawee, which had issued the check and later paid it on the forged endorsement, was liable to the purchaser of the check for conversion, while the depository bank, which had taken the check from the forger and presented it to the drawee for payment, was liable to the drawee under its endorsement warranties. No party challenges this order. But the case has persisted in the form of various claims for attorney's fees and pre–judgment interest. The district court awarded the purchaser of the check both attorney's fees and pre–judgment interest against the drawee, and refused to pass these costs on to the depository bank, which was ultimately liable for the forgery loss. The drawee appeals from this order, raising important questions about attorney's fees and pre–judgment interest under Florida law.

## I. THE FACTS

In March, 1972, John Connolly retained H. Staten Wilson, Jr., an attorney, to represent him in the purchase of a parcel of Florida real estate from Marjorie Walker. In order to provide the balance necessary to close the transaction, Connolly purchased a cashier's check on August 16, 1972, from the Hanover National Bank of Wilkes–Barre (Hanover), in the amount of $50,300. The check was made payable to "Marjorie Walker and H. Staten Wilson, Jr." Connolly delivered the check to Wilson, but Wilson was unable to close the sale because Walker had repudiated the contract. Connolly then instituted suit in state court for specific performance of the contract. Since Wilson had also represented Walker in the real estate transaction, the court required Wilson to withdraw from the case on January 21, 1973. Specific performance was awarded, and the state court of appeals affirmed. *Walker v. Connolly*, 299 So.2d 67 (Fla.Dist. Ct.App.–1st Dist.1974). The Florida Supreme Court denied certiorari on January 28, 1975. 308 So.2d 117 (Fla.1975).

During the course of Connolly's suit against Walker, the parties were apparently content to leave the cashier's check in Wilson's possession.[1] Shortly after the decision of the state court of appeals, however, Connolly discovered that Wilson had deposited the proceeds of the check into a trust account at the Perkins State Bank (Perkins) on September 10, 1973. Unfortunately, Wilson died on May 16, 1974, leaving only $5,304.26 in the trust account. Moreover, Walker stated that she did not endorse the check and did not authorize Wilson to do so for her, and on December 11, 1974, she signed an affidavit to this effect. Connolly was therefore forced to borrow the money necessary to close the transaction. On February 28, 1975, Hanover loaned him $50,000 at 10% interest, secured by an assignment of Connolly's claims against Perkins, Walker and Wilson.

Perkins filed an interpleader complaint, based on 28 U.S.C. § 1335, in the United States District Court for the Northern Dis-

---

1. During the trial of Connolly's suit against Walker, Connolly's attorney introduced the cashier's check into evidence. Wilson was present at the trial, and he requested that the check be returned to his possession and a photographic copy of it be retained for the record. All parties agreed and the check was returned to Wilson. Record at 241.

trict of Florida, on August 6, 1975, in which he named Connolly, Hanover and Wilson's estate as defendants and sought to determine the ownership of the funds remaining in Wilson's trust account at the time of his death. Connolly counterclaimed against Perkins, and cross–claimed against Hanover, Wilson's estate and the estate of Wilson's father (with whom Wilson had practiced law). In each instance Connolly sought to recover the proceeds of the cashier's check which had disappeared from Wilson's account. Connolly's claim against Hanover was based on Fla.Stat. § 673.3–419, which holds a party liable in conversion when it pays an instrument on a forged endorsement.[2] Hanover responded, *inter alia*, by counterclaiming against Perkins on the basis of Perkins' statutory (Fla.Stat. § 674.4–207) and express (stamped on the back of the check) warranties of prior endorsements. On March 4, 1977, the district court granted summary judgment on all claims. The court found Hanover to be liable to Connolly under section 673.3–419, but found Perkins to be liable in turn to Hanover, under section 674.4–207, for the full amount of Hanover's loss to Connolly. The court ordered that the $5,304.26 remaining in Wilson's trust account (which had been deposited in the registry of the court) be paid to Connolly, and granted a judgment to Connolly against Hanover (and, therefore, a judgment to Hanover against Perkins) for the balance of the cashier's check, $44,995.74.

On October 28, 1977, the district court ruled on the parties' requests for attorney's fees and pre–judgment interest. Connolly was granted his attorney's fees from Hanover, and Hanover was granted its attorney's fees from Perkins. The court denied Connolly's motion for pre–judgment interest. At a later date, however, the court granted motions under Rules 59(e) and 60 of the Federal Rules of Civil Procedure, agreeing to reconsider its October 28 order. On August 23, 1978, the court issued a new order, in which it granted Connolly $14,000

in attorney's fees from Hanover, refused to allow Hanover any recovery of attorney's fees from Perkins, and awarded Connolly pre–judgment interest against Hanover from September 10, 1973 (the date the cashier's check was cashed by Wilson) until March 4, 1977 (the date final judgment was entered). The court refused, despite Perkins' endorsement warranty, to hold Perkins liable to Hanover for the amount of Connolly's judgment against Hanover.

On appeal, Hanover argues that the award of attorney's fees to Connolly was in error; that Hanover should have recovered its own attorney's fees from Perkins; and that Hanover should also have recovered from Perkins the amount of Connolly's judgment against it for pre–judgment interest. Perkins argues on appeal that the award of pre–judgment interest to Connolly was in error. We agree with Hanover on its first two counts, and need not reach the third, for we agree with Perkins' contention that the district court improperly awarded pre–judgment interest. We therefore reverse the August 23, 1978 order of the district court and remand for a determination of the precise amount which Hanover may recover from Perkins for Hanover's legal fees.

## II. THE AWARD OF CONNOLLY'S ATTORNEY'S FEES AGAINST HANOVER

The district court found Hanover to be liable to Connolly for Connolly's attorney's fees in the amount of $14,000. Unfortunately, the legal basis of the district court's decision is far from clear. As the court states:

> Ordinarily, a federal district court sitting in a diversity action applies state law granting or denying the right to attorney's fees. *Aerosonic Corp. v. [Trodyne] Tiodyne Corp.*, 402 F.2d [223] 1223 (5th Cir. 1968); 6 Moore's Federal Practice ¶ 54.77[2], at 1712–13 (2d ed. 1976). Florida follows the general American rule

---

**2.** Connolly originally based his rights to the cashier's check on his status as the purchaser of the check; he later succeeded, however, to

Walker's rights as co–payee of the check, when Walker assigned her rights to him on July 13, 1976.

that attorney's fees are not usually recoverable in the absence of overriding considerations which indicate a need for such recovery, *Miller v. Carson*, 401 F.Supp. 835 (M.D.Fla.), *modified*, 392 F.Supp. 515, *aff'd*, 563 F.2d 741 (1975), statutory authorization or when provided for by agreement. *Kessler v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 531 F.2d 248 (5th Cir. 1976). However, such fees can be assessed upon a showing of bad faith or vexatious, wanton, or oppressive behavior. *See Alyeska Pipeline Serv. v. Wilderness Society*, 421 U.S. 240, 258–59 [, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141] (1975); *Carter v. Noble*, 526 F.2d 677 (5th Cir. 1976); *Pupa v. Thompson*, 517 F.2d 693 (5th Cir. 1975); *Fairley v. Patterson*, 493 F.2d 598 (5th Cir. 1974); 6 Moore's Federal Practice ¶ 54.77(2), at 1709 (2d ed. 1976).

Unpublished Memorandum Opinion, Aug. 21, 1978, at 1–2. The district court recognized the "American rule" on attorney's fees, which generally precludes the recovery of such fees as part of the costs of the action. It found, however, that there is an exception to the general rule when a party is guilty of "bad faith or vexatious, wanton, or oppressive behavior," and it then found Hanover to be guilty of such behavior. What is unclear in the court's explanation is the *source* of this exception. Two interpretations of the district court's opinion are reasonable: (1) Although state law generally governs the awarding of attorney's fees in diversity cases, the federal "bad faith" exception to the American rule supersedes state law and allows recovery (at least in interpleader cases) whether or not state law also accepts the exception; or (2) Florida law (which governs in this instance) itself adopts the "bad faith" exception to the American rule.

We find that the district court erred in either case, and therefore need not determine which path the court actually took to its decision. Florida law does govern the

awarding of attorney's fees in this case, and Florida law does not accept the "bad faith" exception to the American rule.

### The Applicable Law

■ In an ordinary diversity case, awards of attorney's fees are governed by applicable state law. As the Supreme Court has explicitly stated:

A very different situation is presented when a federal court sits in a diversity case. "[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." 6 J. Moore, Federal Practice ¶ 54.77(2), pp. 1712–1713 (2d ed. 1974).

*Alyeska Pipeline Service v. Wilderness Society*, 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975). *See also Aerosonic Corp v. Trodyne Corp.*, 402 F.2d 223, 228–29 (5th Cir. 1968).

■ This suit, however, was brought in the nature of an interpleader action, pursuant to 28 U.S.C. § 1335.[3] Perkins (but no other party in the case) argues that a statutory interpleader action is not "an ordinary diversity case" and that federal law should therefore govern the awarding of attorney's fees in this case. The federal interpleader statute broadens jurisdiction and venue beyond that which would be possible in a diversity action brought under 28 U.S.C. § 1332: diversity need only exist among the claimants (*i. e.*, the plaintiff may be a citizen of the same state as is one of the defendants); the amount in controversy requirement is only $500; and venue is authorized in any district where any claimant resides. More importantly, section 1335 may allow an interpleader action in the federal courts where no such action could have been brought in any state court, since that section allows for nationwide service of

---

**3.** An interpleader action may also be brought under Fed.R.Civ.P. 22. But "rule interpleader" may only be invoked where all jurisdictional requisites otherwise are met; it is not dependent, therefore, on any special statutory grant of jurisdiction or venue. *See* 7 C. Wright & A. Miller, *Federal Practice & Procedure* § 1703 (1972).

process regardless of the law of the state in which the district court sits. *See* 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1703 (1972). Moreover, the federal interpleader action seeks to advance an interest which is not implicated in the typical diversity case: it protects a stakeholder who holds funds claimed by two or more adverse parties from multiple liability. *See Lummis v. White,* 629 F.2d 397 (5th Cir. 1980); C. Wright & A. Miller, *supra,* at § 1702; 3A J. Moore, *Moore's Federal Practice* ¶ 22.02[1] (1979). A federal interpleader action may not, therefore, be treated in all respects as a typical diversity case; although substantive state rules of decision generally govern federal interpleader proceedings, the requirement is not absolute or automatic. *See* C. Wright & A. Miller, *supra,* at § 1713; J. Moore, *supra,* at ¶ 22.-14[5].

■ Perkins argues that the awarding of attorney's fees is one of those instances in which federal law governs in an interpleader action. To this end Perkins relies on a line of interpleader cases in the federal courts which apply federal law to determine such awards.[4] But these cases all concern awards to interpleader plaintiffs; *none of* them applies federal law to an award of attorney's fees to *claimants* in interpleader proceedings. An award of attorney's fees to a bystander stakeholder is an altogether different matter from an award of fees to a claimant who is a part of the controversy; there is a federal interest in protecting the stakeholder, but there is no federal interest in awarding a different amount of attorney's fees to a prevailing claimant than would have been awarded if the litigation had proceeded as a series of state lawsuits. Thus, it is clear that not even all interpleader *plaintiffs* are protected by federal law pertaining to attorney's fees. Although costs and attorney's fees are generally awarded by federal courts to the plaintiff who initiates the interpleader as a mere stakeholder, the plaintiff who enters the conflict (by contesting the ownership of the fund or by disputing the correct amount of his liability) will not, in the absence of special circumstances, be awarded any expenses. *See* J. Moore, *supra* § 22.16[2], at 22–166 to 22–177; *Phillips Petroleum Co. v. Hazlewood,* 534 F.2d 61, 63 (5th Cir. 1976); *Century Insurance Co. v. First National Bank of Hughes Springs, Texas,* 102 F.2d 726, 729 (5th Cir.), *cert. denied,* 308 U.S. 570, 60 S.Ct. 84, 84 L.Ed. 478 (1939). State rules of decision which deny an uninterested stakeholder the recovery of attorney's fees interfere with the protective purpose of the interpleader statute and therefore do not bind federal courts. But state rules of decision which merely regulate the recovery of attorney's fees among adverse state law claimants do not hinder the operation of the federal interpleader statute and therefore should be applied as in any other diversity action.

■ In this case all of the litigants are adverse parties. Although neither Hanover nor Perkins sought to recover the amount placed in the registry of the court, Hanover was found liable to Connolly (and Perkins in turn to Hanover) in an amount far in excess of the funds at issue in the original interpleader. We conclude, therefore, that Florida law governs the awarding of attorney's fees among the litigants in this case.

### Awards of Attorney's Fees Under Florida Law

Connolly sought to recover his attorney's fees as part of the costs of his cross–claim against Hanover. Such fees are strictly limited under Florida law. As the Florida Supreme Court has stated:

It is an elemental principle of law in this State that attorney's fees may be award-

---

4. *Bank of China v. Wells Fargo Bank & Union Trust Co.,* 209 F.2d 467, 476–77 (9th Cir. 1953); *Palomas Land & Cattle Co. v. Baldwin,* 189 F.2d 936 (9th Cir. 1951); *Lincoln Income Life Insurance Co. v. Harrison,* 71 F.R.D. 27, 30 (W.D.Okl.1976); *Minnesota Mutual Life Insurance Co. v. Gustafson,* 415 F.Supp. 615, 617 (N.D.Ill.1976); *National Life & Accident Insurance Co. v. Bruce,* 309 F.Supp. 1314 (W.D.Mo. 1970); *Klebanoff v. Mutual Life Insurance Co.,* 246 F.Supp. 935, 949–50 (D.Conn.1965), *rev'd on other grounds,* 362 F.2d 975, 977 n. 4 (2nd Cir. 1966); *Equitable Life Insurance Society v. Miller,* 229 F.Supp. 1018 (D.Minn.1964).

ed a prevailing party only under three circumstances, viz: (1) where authorized by contract; (2) where authorized by a constitutional legislative enactment; and (3) where awarded for services performed by an attorney in creating or bringing into the court a fund or other property. *Kittel v. Kittel,* 210 So.2d 1, 3 (Fla.1968). *See also Allstate Insurance Co. v. Consolidated Systems, Inc.,* 465 F.2d 710, 716 (5th Cir. 1972); *Estate of Hampton v. Fairchild–Florida Construction Co.,* 341 So.2d 759 (Fla.1976); *Campbell v. Maze,* 339 So.2d 202 (Fla.1976); *Rivera v. Deauville Hotel, Employers Service Corp.,* 277 So.2d 265 (Fla. 1973); *Stone v. Jeffres,* 208 So.2d 827 (Fla. 1968); *DeGarcia v. Seiglie,* 230 So.2d 37 (Fla.Dist.Ct.App.–4th Dist. 1970). *See generally* 12 Fla.Jur.2d §§ 31–39 (1979).

█ These decisions do not accept the federal "bad faith" exception to the American rule. To be sure, the Florida Supreme Court has recognized that a limited right to recover attorney's fees may exist in cases of "fraud or malice":

> The right to recover attorneys' fees as part of the costs did not exist at common law. It must be provided by statute or contract. Fraud or malice may modify the rule under circumstances. 14 Am. Jur. 38, Section 63. See also 15 Am.Jur. 552, Sec. 143.

*Codomo v. Emanuel,* 91 So.2d 653 (Fla. 1956). This exception has been narrowly interpreted, and seems limited to cases where the fraud or malice is "specific, certain and conclusive." *Baya v. Central & Southern Florida Flood Control District,* 184 So.2d 501, 502 (Fla.Dist.Ct.App.–2d Dist. 1966). More importantly, this exception does not appear to allow attorney's fees as an element of *costs.* The Florida District Court of Appeals for the Second District has explained *Codomo* as follows:

> [W]e choose to avoid a literal interpretation that would make fraud or malice an exception to the rule against awarding attorneys' fees *as part of costs.* 14 Am.Jur. Costs § 63 and 15 Am.Jur. Damages § 143, cited by the court as authority for its statement, clearly state that the

presence of fraud and malice may *not* bring forth an exception to the rule. Rather, these elements may furnish a basis for recovery in certain circumstances, e. g., a suit for malicious prosecution, *as an element of damages.*

*Weisenberg v. Carlton,* 233 So.2d 659, 661 (Fla.Dist.Ct.App.–2d Dist.), *cert. denied,* 240 So.2d 643 (1970) (emphasis in original). *See also Canadian Universal Insurance Co. v. Employers Surplus Lines Insurance Co.,* 325 So.2d 29 (Fla.Dist.Ct.App.–3rd Dist.), *cert. denied,* 336 So.2d 1180 (1976) (attorney's fees included as damages in suit against primary insurer by excess insurer for refusal to settle a claim); *Glusman v. Lieberman,* 285 So.2d 29 (Fla.Dist.Ct.App.–4th Dist. 1973) (attorney's fees included as damages in suit for slander of title).

█ The district court relied on the federal bad faith exception to the American rule, and based its judgment on a finding that Hanover had acted in bad faith within the meaning of that exception; Florida law does not, however, recognize bad faith as a basis for the award of attorney's fees. Moreover, even if the district court's opinion could be interpreted as a finding of "fraud or malice" on the part of Hanover, such a finding could not .form the basis under Florida law of an award of attorney's fees to Connolly. Connolly did not seek his fees as damages incident to a claim based on fraud or malice, but sought instead to recover his fees as part of the costs of his action, *i. e.,* on the basis of Hanover's behavior in response to his conversion claim under the Uniform Commercial Code. Consequently, Connolly may recover his fees only under one of the limited circumstances set forth in *Kittel v. Kittel, supra.* Since there is no allegation in the record that any contract provides for the fees awarded to Connolly, or that such fees compensate an attorney for bringing a fund into court, we conclude that the award must stand, if at all, on statutory authority.

Connolly relies on a number of provisions in the Uniform Commercial Code to establish a right to attorney's fees. These include Fla.Stat. §§ 674.4–207 (warranties on

transfer and presentment), 674.4–103 (failure to exercise ordinary care), and 674.4–402 (wrongful dishonor). These sections arguably contemplate awards of attorney's fees, but Connolly's cause of action arose under section 673.3–419(1), which holds a bank liable in conversion when it pays an instrument on a forged endorsement. That section does not mention attorney's fees. Paragraph (2) of the section does, however, establish the following measure of liability:

> In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument.

Fla.Stat. § 673.3–419(2). The Official Comments to the Uniform Commercial Code indicate that the purpose of the first sentence of this provision is to insure that the drawee is not held liable for *less* than the face amount of the instrument; the Comments explain the sentence as "a rule of strict liability." 19B Fla.Stat.Ann. § 673.3–419 (1969), at 259. *See Smith v. General Casualty Co. of Wisconsin*, 27 U.C.C.Rep. Serv. 493 (Ill.App. 3rd Cir., Aug. 31, 1979); *Hartford Accident & Indemnity Co. v. South Windsor Bank & Trust Co.*, 19 U.C.C. Rep.Serv. 578 (Conn., May 11, 1976). *But see Twellman v. Lindell Trust Co.*, 19 U.C.C. Rep.Serv. 604, 534 S.W.2d 83 (Mo.Ct.App. 1976) (allowing a set–off for amounts already recovered by plaintiff). One might argue, therefore, that this provision was not intended to preclude the awarding of attorney's fees in actions for conversion under the section.

■ But we believe that Florida law requires a stronger showing of legislative intent to the contrary before attorney's fees can be awarded. Florida courts have repeatedly stated that statutory provisions awarding attorney's fees as costs of the action "are considered in derogation of common law so as to require strict construction

and constitutional evaluation." *Kittel v. Kittel, supra*, at 3 n. 7. *See Sunbeam Enterprises, Inc. v. Upthegrove*, 316 So.2d 34 (Fla.1975); *Fisher v. Fisher*, 318 So.2d 434 (Fla.Dist.Ct.App.–3rd Cir. 1975); *Jackson v. Hatch*, 288 So.2d 564 (Fla.Dist.Ct.App.–3rd Cir. 1975). Florida courts require an explicit statutory directive before they will award attorney's fees. The Florida Supreme Court has held, for example, that a statute authorizing an award of attorney's fees will not be read to include fees for appellate work unless the statute specifically includes such fees:

> [T]he District Court erred in awarding attorney's fees on appeal to respondent since Section 713.29 does not expressly authorize the award of attorneys' fees on appeal. . . . "[T]he statute by not specifically setting out attorney's fees incurred on appeal would not encompass the allowance of such a fee."

*Sunbeam Enterprises, Inc. v. Upthegrove*, 316 So.2d at 39.[5] The one Florida court which has interpreted a provision in the Uniform Commercial Code which arguably allows for awards of attorney's fees has applied this strict approach. In *Florida National Bank at Gainesville v. Alfred & Ann Goldstein Foundation, Inc.*, 327 So.2d 110 (Fla.Dist.Ct.App.–1st Dist. 1976), the court held that Fla.Stat. § 675.5–115 (remedy for improper dishonor or anticipatory repudiation) did not allow for attorney's fees, either as costs or as damages; this conclusion was reached in spite of that section's provision for "incidental damages" and in spite of § 672.2–710, which defines "incidental damages" of a seller to include "any commercially reasonable charges, expenses or commissions" incurred in connection with the breach of a contract of sale.

■ No Florida court has determined whether fees can be awarded under section 673.3–419, under which Connolly asserts his claim against Hanover. We do not believe, however, that Florida law contemplates

---

**5.** This particular holding–but not the general rule strictly construing statutory grants of attorney's fees–was changed by the Florida legislature in 1977. Fla.Stat. § 59.46 now provides

that any statutory provision providing for an award of attorney's fees to a prevailing party shall be construed to include such fees on appeal.

such an award. That section makes no provision for attorney's fees and, to the contrary, can be read literally to preclude such awards. In the context of Florida's strict construction of statutes authorizing awards of attorney's fees, we cannot find that section 673.3–419 allows such awards.

Connolly argues that we should nevertheless award him his fees under the Uniform Commercial Code, because of the general policy, stated in Fla.Stat. § 671.1–106, that "remedies provided by [the U.C.C.] should be liberally administered" to put the aggrieved party in his original position. This section (as well as section 671.1–103, which provides that the principles of law and equity shall supplement the U.C.C. "unless displaced" by "particular provisions") was considered by the Florida District Court of Appeals in *Florida National Bank at Gainesville v. Alfred & Ann Goldstein Foundation, Inc., supra*, which nevertheless refused to allow an award of attorney's fees. Although the court did not discuss these provisions in detail, we agree with the court's implicit finding that they do not override Florida's otherwise strict construction of attorney's fee provisions. We note that some sections of the U.C.C. do appear to contemplate awards of attorney's fees, including those sections (674.4–207, 674.4–103 and 674.4–402) cited by Connolly. Section 673.3–419, on the other hand, does not make *any* mention of attorney's fees. Since the statute was apparently designed to include fees in some instances, it would be an anomalous interpretation of the U.C.C. as a whole to hold that section 671.1–106 allows fees under those provisions in which the drafters of the statute omitted them. We believe it would be contrary to Florida's strict construction of attorney's fee provisions to hold that a U.C.C. section which

does not explicitly provide for fees in fact allows for them because of a general policy of "liberally" administering U.C.C. remedies.

 Finally, Connolly relies on Fla.Stat. § 57.105, which provides:

> The court shall award a reasonable attorney's fee to the prevailing party in any civil action in which the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party.

This statute was not argued in the district court by any of the parties. Nevertheless it is clear that Connolly's claim does not meet the strict standard which it contemplates. *See Allen v. Estate of Dutton*, 384 So.2d 171, 175 (Fla.Dist.Ct.App.–5th Dist. 1980).

We conclude that there is no basis under Florida law for an award to Connolly of the amount he has expended for attorney's fees in this action, and we therefore reverse that portion of the district court's order which grants Connolly an award against Hanover in the amount of $14,000.

## III. HANOVER'S RIGHT TO AN AWARD OF ATTORNEY'S FEES AGAINST PERKINS

 Hanover's right to recover from Perkins the amount of Hanover's liability to Connolly arises under Fla.Stat. § 674.4–207 (warranties of customer and collecting bank on transfer or presentment of items). The district court concluded that this section generally entitles the drawee to recover from a bank which warranted the forged endorsement the attorney's fees which the drawee has expended in defending against a conversion claim, but refused to make such an award to Hanover because of its finding that Hanover acted in "bad faith."[6]

---

**6.** Although the court's analysis was based on the federal bad faith exception to the American rule, and not on principles applicable to indemnity actions such as the warranty claim brought by Hanover against Perkins, we believe that a finding of bad faith within the meaning of federal law might indeed provide the basis for a refusal to award attorney's fees in a state indemnity action. The right to indemnity may be denied or limited because of a

"wrongful act or omission" of the indemnitee which "proximately contributes to the injury complained of." *Stuart v. Hertz Corp.*, 351 So.2d 703, 705 (Fla.1977). *See Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equipment Co.*, 374 So.2d 487 (Fla.1979). If the indemnitee's bad faith actions somehow result in higher legal fees, the indemnitee might not be allowed to pass those costs on to the indemnitor. Since we conclude below that the

We agree with the district court that section 674.4–207 includes attorney's fees in the amount recoverable by a bank to whom such a warranty runs. We disagree, however, with the district court's finding that Hanover acted in bad faith, and we therefore reverse that portion of the district court's judgment and remand the case to the district court for a determination of Hanover's legal fees.

### Attorney's Fees as an Element of Damages under Fla.Stat. § 674.4–207

Section 674.4–207(3) limits the amount of damages for breach of a warranty on transfer or presentment:

Damages for breach of such warranties or engagement to honor shall not exceed the consideration received by the customer or collecting bank responsible plus finance charges and expenses related to the item, if any.

The Official Comments to the Uniform Commercial Code explain that the term "expenses" in this provision "may be ordinary collecting expenses and in appropriate cases could also include such expenses as attorneys fees." 19B Fla.Stat.Ann. § 674.-4–207(3) (1966) at 386. The Court of Appeals for the Eighth Circuit has considered whether this provision in U.C.C. § 4–207 should therefore be interpreted so as to award attorney's fees as a part of the damages contemplated by the section. In *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 491 F.2d 192 (8th Cir. 1974), the court found that fees were included despite state restrictions on the awarding of legal fees (under Missouri law):

In the absence of a statute or contract providing for their allowance, attorney fees are not recoverable by the prevailing party. However, an exception to the general rule is that attorneys' fees which have been reasonably incurred in the defense of a claim indemnified against may be recovered where the right to indemnity either arises under a contract or is

implied by law, provided that the indemnitor has notice of the lawsuit and an opportunity to defend.

491 F.2d at 198 n. 9 (citations omitted). The court read the warranty established by U.C.C. § 4–207 to establish, in effect, a right of indemnity under state law. Attorney's fees incurred in defense of the claim indemnified against are a part of the damages sought in an indemnity action under Missouri law and therefore were allowed under section 4–207.

■■■■ The right to attorney's fees as part of the damages incident to an action in indemnity is well established in Florida law. *E. g., Occidental Fire & Casualty Co. of North Carolina v. Stevenson*, 370 So.2d 1211 (Fla.Dist.Ct.App.–2d Dist. 1979); *Brown v. Financial Indemnity Co.*, 366 So.2d 1273 (Fla.Dist.Ct.App.–4th Dist.), *cert. denied*, 378 So.2d 342 (1979); *Thomas Awning & Tent Co. v. Toby's Twelfth Cafeteria, Inc.*, 204 So.2d 756 (Fla.Dist.Ct.App.–3rd Dist. 1967), *overruled in part on other grounds, University Plaza Shopping Center, Inc. v. Stewart*, 272 So.2d 507 (Fla.1973); *Fontainebleau Hotel Corp. v. Postol*, 142 So.2d 299 (Fla.Dist.Ct.App.–3rd Dist. 1962). Florida law does require that a complaint alleging an action in indemnity "set forth factual allegations designating the basis for the right to indemnity." *Dunham–Bush, Inc. v. Thermo–Air Service, Inc.*, 22 U.C.C.Rep. Serv. 347, 351 So.2d 351 (Fla.Dist.Ct.App.–4th Dist. 1977). But Hanover met this requirement by asserting its warranty rights under section 674.4–207, for a right to indemnity under Florida law arises from the breach of warranties created by the Uniform Commercial Code. *See Dunham–Bush, Inc. v. Thermo–Air Service, Inc., supra; Mims Crane Service, Inc. v. Insley Manufacturing Corp.*, 226 So.2d 836 (Fla. Dist.Ct.App.–2d Dist.), *cert. denied*, 234 So.2d 122 (1969).

■■■■ It is doubtful that the wording of section 674.4–207 is explicit enough to allow for awards of attorney's fees to a prevailing

---

district court's finding that Hanover acted in bad faith was in error, however, we need not decide precisely when a "bad faith" action

would limit the indemnitee's recovery under Florida law.

party as part of his costs. But fees are sought by Hanover as part of the damages in its indemnity counterclaim against Perkins. Therefore the general rule strictly construing statutory awards of attorney's fees does not seem applicable. The Florida District Court of Appeals for the Third Circuit has explained:

> The appellant urges the applicability to this case of the rule that attorney's fees cannot be charged in the absence of statutory authority, unless the defendant is bound for their payment by contract. The situation involved in the instant case does not appear to be within the purview of this rule. In the instant case, an indemnitee is seeking to recover an attorney's fee as a part of the damages to which he is entitled.

*Fontainebleau Hotel Corp. v. Postol, supra* at 300 (citations omitted). We do not believe, therefore, that the result would be any different under Florida law than that reached under Missouri law by the Court of Appeals for the Eighth Circuit in *Bagby*. We conclude that a plaintiff who seeks indemnity for suits brought against him because of a breach of a warranty created by Fla.Stat. § 674.4–207 is entitled to receive, as an element of damages, the attorney's fees expended in defense of the claim.

### The District Court's Finding of "Bad Faith"

The district court found that Hanover had acted in bad faith because of Hanover's behavior towards Connolly after the discovery of the forgery. Thus, the court's analysis begins as follows:

> While it is true that Hanover was not obliged to immediately issue another cashier's check solely upon the bald asser-

tion of Connolly that the first had been forged and wrongly paid, Hanover was obligated to terminate its action against Connolly once that fact had been ascertained. Its remedies lay against Perkins under the warranties found in Fla. Stat. § 674.207 . . . .

Unpublished Memorandum Opinion, Aug. 21, 1978, at 2. The court believed that Hanover would be obligated to pay the $50,-300 to Connolly as soon as the fact of the forgery (and therefore Connolly's right to recover in conversion against Hanover) was established, since it could thereafter seek indemnity from Perkins. If Walker's signature was indeed forged, then Hanover would be entitled to indemnity from Perkins under Fla.Stat. § 674.4–207. But this alone could not have led the court to award attorney's fees to Connolly: the court did not find that the fact of the forgery was undisputed during the many months before summary judgment was granted, and the record shows quite the opposite.[7] Surely it is not an act of bad faith for a defendant to refuse to pay a claim where he reasonably believes that a defense may exist. To hold otherwise would have subjected Hanover to potential double liability: it had already paid on the cashier's check once (when Perkins presented it for payment), and would have been entitled to indemnity for the second payment only if the fact of the endorsement forgery was established.

The court's decision rests instead on the assignment which Connolly made to Hanover of his rights in the cashier's check. When Connolly borrowed $50,000 from Hanover in February, 1975, in order to close his purchase from Walker, he executed a note in that amount to Hanover and deposited as "collateral security" for payment of

---

**7.** The sole evidence of forgery was Walker's affidavit, and Perkins (which had dealt with Wilson) indicated throughout the litigation that it had reason to believe that Walker's signature was genuine. On November 26, 1975, Perkins answered Connolly's counterclaim by stating that it was "without knowledge as to whether the alleged endorsement was forged." And on December 13, 1976, Perkins responded to Connolly's motion for summary judgment by requesting more time for discovery, in the belief

that "the depositions of a number of witnesses will reveal facts sufficient to controvert the facts as contained in the self-serving affidavit of Marjorie Walker." On the same date Perkins filed an affidavit of its president, Roy Perkins, Jr., who stated that the depositions of persons having knowledge of the facts relevant to the endorsement of the cashier's check would "reveal that said cashier's check was properly endorsed, negotiated, transferred, deposited, and/or collected."

the note an assignment of his $50,300 claim, which had arisen out of the payment of the cashier's check, against Perkins, Walker and Wilson. As the court explained in an order of October 4, 1978 (rejecting Hanover's claim that the Rules 59(e) and 60 motions were wrongfully granted):

> In the usual commercial situation, Hanover would be correct in not risking its funds until a judicial determination had been made. However, Hanover voluntarily took this transaction out of the normal commercial setting by accepting Connolly's assignment. As a result of that action, Hanover possessed every right that Connolly had against the other parties to the action. Hanover did not stand as a volunteer, unprotected in the event that the signature on the check was actually valid. If that had been the court's judgment, Hanover would have had a cause of action against Connolly to recover the amount paid following the assignment. Therefore, this court was justified in finding bad faith on the part of Hanover as the basis for an award of attorney's fees.

Unpublished Memorandum Opinion, Oct. 4, 1978, at 4. The court's decision seems based, therefore, on Hanover's possession of a cause of action against each person who might be found liable for the payment of the cashier's check. If there was a forgery, Hanover could collect from the estate of Wilson (the forger) or from Perkins (which had guaranteed the endorsement). If there was no forgery, Hanover could collect from Wilson's estate, Walker or Connolly (depending on who had received the proceeds of the check when it was cashed in 1973). To be sure, Connolly's assignment to Hanover was not an absolute transfer of Connolly's rights; it was executed only as *collateral security* for the loan. As the holder of an assignment made as security for its loan, Hanover would not (absent a default) succeed to Connolly's rights against all other parties. Nevertheless the district court was at least correct to the extent that Hanover

would have a right to a return of its funds regardless of the outcome of the instant suit: if Hanover's claim against Perkins failed (*i. e.*, Walker's signature was found to be genuine), Connolly would remain personally liable on the note, and would have to either repay it or forfeit his rights against other parties to the action (*i. e.*, the presumed recipients of the funds). On Connolly's default, Hanover would acquire a cause of action against each party who might ultimately be held liable for the lost funds. The district court seems to have found bad faith in Hanover's willingness to *loan* the funds to Connolly on this basis but not *give* him the funds in exchange for the same assignment of rights. The court found, therefore, that Hanover's only possible good faith action—once Connolly offered it an assignment of his rights—was to give Connolly the full amount of the missing funds, accept an outright assignment of Connolly's claims, and pursue for itself the various sources of ultimate liability. In short, the district court found that Hanover was obligated to assume whatever risk was involved in litigating Connolly's claims.

██ The district court's reasoning ultimately must rest on one of two assumptions: (1) that Hanover would assume no risk by paying Connolly the amount of his claim as soon as Connolly assigned to Hanover his rights against all parties who might be ultimately liable for the loss; or (2) that Hanover was obligated to assume whatever risk was implicit in that course of action. We need not determine which assumption was actually made by the district court, for both are incorrect as a matter of law.

The first assumption is wrong because all litigation entails risk, regardless of the legal certainty of the plaintiff's claim. Even if Hanover's right to recover from some party was absolute once Connolly assigned his rights, there were the possibilities that recovery would come only after a long period of time [8] and that the party ultimately liable would be judgment-proof.[9] All else

---

8. This case, for example, has taken over five years (thus far) to resolve.

9. Had the district court found that Walker's endorsement was genuine but that Wilson had *stolen* the funds, Perkins would have had no

being equal, it is not an act of bad faith under any standard to refuse to exchange an amount of cash for a cause of action (no matter how secure) of no greater amount.

The second assumption is wrong because Hanover's right to indemnity from Perkins did not obligate it to assume the risks of litigating Connolly's claim. The Uniform Commercial Code creates two separate causes of action in order to place the ultimate liability for a forged endorsement on a check which is issued by one bank and cashed by another: the drawee (Hanover) is liable directly to the payee of the cashier's check (Walker, who assigned her rights to Connolly) in conversion, while the depositary bank (Perkins), which cashed the check for the forger and presented it to the drawee for payment with endorsements guaranteed, is liable to the drawee for breach of warranty. The drawee is thrust into the middle of this chain only because of its superior ability to assert the defense of the drawer's or purchaser's negligence. Fla.Stat. § 673.3–406 denies recovery on a converted instrument to any party who "by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature." The drawee is in a better position to assert this negligence because the drawee personally dealt with the purchaser of the cashier's check and consequently is more likely to have information indicating such negligence. *See* J. White and R. Summers, *Uniform Commercial Code* § 15–4 (1972). This rule, which implicates the drawee only as an intermediary between the payee and the depositary bank, has been much criticized and is sometimes ignored. *See Id.* The more important aspect of this chain of liability is the choice of the party ultimately responsible for the loss. The warranty provisions of the Uniform Commercial Code place that liability on the party which dealt with the forger, in this case Perkins. This serves at least three important purposes. First, it speeds the collection and transfer process. Each bank is ultimately responsi-

ble for the legitimacy of endorsements accepted for the first time by that bank; this frees subsequent collecting and drawee banks from reexamining what has already been approved by a prior bank. Second, it reduces unnecessary litigation by establishing a firm rule of liability. And third, it places the burden of inspecting endorsements on the bank which deals with the forger and is therefore best able to protect itself. *See Miami Beach First National Bank v. Edgerly*, 121 So.2d 417 (Fla.1960); *Federal Deposit Insurance Corp. v. Marine National Bank of Jacksonville*, 303 F.Supp. 401 (M.D.Fla.1969), *affirmed*, 431 F.2d 341 (5th Cir. 1970). The statute is designed, therefore, to place the burden of losses from endorsement forgeries on the bank which first accepts such forgeries. The drawee is placed in the chain of liability only for the limited purpose of asserting the drawer's or purchaser's negligence; and, since most plaintiffs in such actions are payees and not drawers or purchasers, even this limited purpose is not often served. *See* J. White and R. Summers, *supra*. It seems anomalous at best to hold that the drawee is somehow obligated to assume the risks of litigating the payee's cause of action. The policy behind this chain of liability primarily rests on the ultimate responsibility of the bank which cashes the check for the forger, not on any duty of the drawee which originally sells the check. We conclude, therefore, that Hanover had no obligation to pay Connolly his claim in exchange for an assignment of Connolly's rights.

Indeed, if any party to this litigation can be said to have acted in "bad faith," that party is Perkins. Perkins' liability under the warranty provisions of section 674.4–207 was never doubted; Perkins did not even answer Hanover's counterclaim. At all times its only defense was the assertion that Walker's signature was genuine. Thus, Perkins responded to Connolly's motion for summary judgment in December,

---

liability and Hanover's *sole* remedy would have been against Wilson's estate. But it appears that the estate has no funds with which to pay

such a judgment, for it defaulted in this suit and there is no indication in the record that any party has attempted to collect from it.

1976, by arguing that depositions of persons having knowledge of the relevant events would reveal that the cashier's check had been properly endorsed. But Perkins had known of Walker's allegation of forgery at least since May 29, 1975, when it was informed of that fact by Hanover's counsel. Nevertheless there is no indication in the record that Perkins made any attempt during the intervening fifteen months to depose any of the persons (some of whom were its own employees) who purportedly had relevant information. However, we need not decide whether Perkins acted in "bad faith" within the federal bad faith exception to the American rule, for we have already determined that Florida does not recognize that exception. Moreover, the district court did not explicitly consider the possibility of Perkins' bad faith, and therefore the record may not be fully developed in this regard. We do believe, however, that Hanover's actions can be favorably compared with what the record reveals of Perkins' behavior. Although Perkins' only defense to ultimate liability was the genuineness of Walker's endorsement, it made no attempt in over one and a half years to depose any of the persons who purportedly had information to establish that fact. In this context we believe it particularly difficult to find Hanover's behavior to be in bad faith.

The district court was also influenced, however, by the way in which Hanover received the assignment from Connolly—that is, as security for an interest–bearing loan:

> Compounding Hanover's behavior is the fact that Hanover also took Connolly's assignment as security for a loan of $50,000 at 10% interest to Connolly in order that the original land purchase could be consummated.

Unpublished Memorandum Opinion, Aug. 21, 1978, at 2. We disagree. Since Hanover had no duty to assume the risks of Connolly's litigation, it had the right to charge interest for a loan which in effect may have assumed such risks (i. e., by taking an assignment of Connolly's causes of action as sole security for the loan).

We conclude that Hanover did not act in bad faith and that it is therefore entitled to indemnity for its legal fees. Hanover's recovery should be limited, however, to those fees expended in defense of Connolly's cross–claim, and should not include those fees expended in litigation to enforce its indemnity rights against Perkins. *E. g., American Home Assurance Co. v. City of Opa Locka*, 368 So.2d 416 (Fla.Dist.Ct.App.–3rd Dist. 1979). Since both actions were asserted in the same lawsuit, it may be difficult to determine the precise portion of Hanover's fees which are attributable to its indemnity action. We note that Perkins did not contest its liability under section 674.4–207; the only litigated issue which involves Perkins' indemnity liability is whether Connolly's judgment against Hanover for attorney's fees and pre–judgment interest should be passed on to Perkins. Still we believe that this fact issue would be best decided by the district court. We therefore remand with instructions to enter a judgment in favor of Hanover and against Perkins for the amount of the reasonable attorney's fees incurred by Hanover in defense of Connolly's cross–claim.

## IV. THE AWARD OF PRE–JUDGMENT INTEREST AGAINST HANOVER

As discussed above, Connolly's cause of action against Hanover arises under Fla.Stat. § 673.3–419 (conversion of an instrument). The first sentence of section 673.3–419(2) limits liability, in an action against a drawee under that section, to "the face amount of the instrument." The district court nevertheless awarded Connolly pre–judgment interest against Hanover for the period of time between the payment of the cashier's check by Hanover and the court's rendering of summary judgment. The district court avoided this strict limitation on damages by relying on the second sentence of section 673.3–419(2), which provides that, in an action under the section which is *not* against a drawee, the measure of liability is only "presumed" to be the face amount of the instrument. But the court's reliance on the second sentence of

the section is misplaced, for Hanover was a *drawee*. A cashier's check is, under Florida law, "a bill of exchange drawn by a bank upon itself and accepted in advance by the act of its issuance and not subject to countermand by either its purchaser or the issuing bank." *State of Pennsylvania v. Curtiss National Bank of Miami Springs, Florida*, 427 F.2d 395, 398 (5th Cir. 1970). A bank which issues a cashier's check is both the drawer and the drawee of the check, and therefore an action against the issuer of such a check is governed by the first sentence of section 673.3–419(2).

One might still argue that pre–judgment interest is appropriate here, for (as discussed above, in connection with the award of attorney's fees against Hanover) there are indications that Section 673.3–419(2) was intended to establish a minimum measure of liability and not to preclude additional elements of damages. Thus, pre–judgment interest may be appropriate under either theory relied upon by the district court. That court first found that Florida law allows for such an award in cases of conversion; this theory was based on *Capital Lincoln–Mercury, Inc. v. General Motors Acceptance Corp.*, 105 So.2d 899 (Fla.Dist. Ct.App.–1st Dist. 1958) (conversion of an automobile). The court then relied on a line of Florida cases allowing pre–judgment interest in breach of contract suits, and held that Hanover had made an implied promise to Connolly not to pay the check on a forged endorsement; this theory was based on *Twellman v. Lindell Trust Co.*, 19 U.C.C. Rep.Serv. 604, 534 S.W.2d 83, 96–97 (Mo. App. 1976).

 Neither of these theories of recovery is well–established in Florida law, and neither has been applied in the face of a literal statutory limitation on damages. Therefore we could not accept the district court's analysis without radically developing and extending Florida law on pre–judgment interest and substantially altering the literal meaning of a Florida statute. In our judgment this would require us to go beyond the proper role of a federal court sitting in a diversity case. We recognize that federal courts are required to determine and apply state law in diversity cases whether or not the state has provided any guidance for the decision; accordingly, federal courts sometimes must decide issues of state law even in the complete absence of relevant state statutes and cases. *E. g., Nobs Chemical, U.S.A., Inc. v. Koppers Co., Inc.*, 616 F.2d 212 (5th Cir. 1980); *Kellerman v. Miller*, 354 F.2d 46 (5th Cir. 1965), *cert. denied*, 384 U.S. 951, 86 S.Ct. 1571, 16 L.Ed.2d 548 (1966); *Santiesteban v. Goodyear Tire & Rubber Co.*, 306 F.2d 9 (5th Cir. 1962). But this is not a case where we are being asked to decide a new issue of state law in the absence of state guidance. We are being asked, instead, to extend a plausible but undeveloped theory of recovery in order to limit the literal meaning of a state statute. Our role as an innovator of state law is necessarily weaker than that of state courts. Only recently we refused for this reason to add to the common law of Texas a new rule of products liability:

We have no assurance whatever that Texas would adopt the product line rule of liability. That rule represents at least a radical extension of Texas product liability theory, at most a shift to a new and additional basis for liability. Neither action is appropriate for us. Whatever the merits or demerits of the proposed new rule, for us to adopt it for Texas would be presumptuous.

*Rhynes v. Branick Manufacturing Corp.*, 629 F.2d 409, 410 (5th Cir. 1980). We are particularly reluctant to adopt new rules of law in order to restrict the plain meaning of state statutes. Fla.Stat. § 673.-3–419(2) can be plausibly interpreted–in the context of that section's legislative history and certain undeveloped theories of recovery under Florida law–to allow for pre–judgment interest in spite of the literal wording of the provision. Such a radical interpretation, however, is uniquely within the province of Florida courts, and we decline to adopt it. Therefore we must reverse that portion of the district court's judgment which awards Connolly pre–judgment interest against Hanover.

We reverse the judgment of the district court as entered in its order of August 23, 1978. Connolly is not entitled under Florida law to recover either attorney's fees or pre–judgment interest from Hanover, but Hanover is entitled under Florida law to recover its attorney's fees from Perkins. Connolly's motion for costs and attorney's fees on appeal is denied, since Connolly is not entitled to any such recovery; Hanover's motion for costs and attorney's fees on appeal is granted only to the extent that such expenses were incurred in defense of Connolly's cross–claim (including his claims for attorney's fees and pre–judgment interest). We remand to the district court with instructions to enter a judgment in favor of Hanover and against Perkins for the amount of the reasonable attorney's fees incurred by Hanover (both in the district court and on appeal) in defense of Connolly's cross–claim.

REVERSED and REMANDED.