■ MANUFACTURERS HANOVER TRUST COMPANY, Respondent, v MANUFACTURERS AND TRADERS TRUST COMPANY, Also Known as M & T BANK, Appellant.—Judgment, Supreme Court, New York County (William Davis, J.), entered May 22, 1990, which found in favor of the plaintiff, upon the plaintiff's motion for summary judgment pursuant to CPLR 3212, in the total sum of $220,554.64, unanimously affirmed, with costs and disbursements payable to plaintiff.

Albert Rodman was the owner of 68 U.S. Series E Savings Bonds. Of the bonds, 62 were issued jointly to Albert Rodman and his brother John Rodman, and 6 were issued to Albert, but were payable to John upon Albert's death. Albert Rodman died on March 18, 1983, and John Rodman retained Alfred L.

Fritz, III, as attorney for the estate of Albert Rodman. John Rodman signed the backs of the bonds in the "Request for Payment" section and either gave the indorsed bonds to Fritz or allowed him to take them. On June 30, 1983, Fritz presented the bonds to the plaintiff Manufacturers Hanover Trust Company (MHT) at its Lockport, New York branch for redemption. MHT cashed the bonds and gave Fritz its cashier's check No. 335826, dated June 30, 1983 in the amount of $135,962.40, payable to John Rodman. MHT representative E. Eric Hansen, in his affidavit submitted on behalf of the plaintiff, stated that a check was issued to Fritz because he was a "local attorney".

Mr. Fritz then deposited the cashier's check bearing his own and John Rodman's indorsements in an account at Manufacturers and Traders Trust Company (Traders) denominated "Alfred L. Fritz, III Operating Account". On or about July 1, 1983, defendant Traders presented the cashier's check to MHT for payment. MHT paid the amount on the check to Traders for the Fritz account. John Rodman then filed a claim with the Treasury Department for reissuance or replacement of the bonds, claiming that he had never received the proceeds thereof. The Treasury Department reimbursed Rodman for the full amount of the proceeds of the redemption by MHT, plus accrued interest, in the total amount of $169,038.85.

Thereafter, MHT reimbursed the Treasury in full and commenced this action against Traders alleging breach of the warranty of presentment and transfer pursuant to UCC 4-207, premised upon an alleged forgery by Attorney Fritz of John Rodman's indorsement on the cashier's check.

John Rodman died several years before the summary judgment motion was made in this action. Consequently, the only evidence that Rodman's indorsement on the cashier's check had been forged was Rodman's affidavit from a prior, discontinued action commenced by Rodman against the parties herein, and the affidavit of the bank's representative in which he stated that Rodman told him that his signature had been forged. Rodman's affidavit filed in the prior action was inadmissible hearsay (Friedman v Sills, 112 AD2d 343), and in any event was by itself insufficient to raise a triable issue as to the genuineness of the indorsement (State Bank v McAuliffe, 97 AD2d 607, appeal dismissed 61 NY2d 758). The affidavit of the bank's representative was equally insufficient.

However, at oral argument of the appeal the parties brought a fact to this Court's attention that was not set out in the briefs, and not ascertainable from the record, namely, that

the deceased's attorney, Alfred L. Fritz, III, was criminally prosecuted and convicted in connection with the forgery of the cashier's check. That evidence is sufficient to conclusively prove that the payee's indorsement on the cashier's check was forged, and thus to establish the defendant's liability under UCC 4-207.

The defendant bank's defense, based on UCC 3-406, that MHT is precluded from recovering under UCC 4-207 based on the forgery because its negligence substantially contributed to the forgery, is unavailing. While MHT's redemption of the bonds without the proper witnessing of John Rodman's signature was not in accordance with the applicable Treasury Regulations, it does not constitute negligence which "substantially contributed" to the forgery. MHT properly made the cashier's check payable to John Rodman, and delivered the check to his attorney. "In general, a bank may assume that a person acting as a fiduciary will apply entrusted funds to the proper purposes and will adhere to the conditions of the appointment * * * A bank is not in the normal course required to conduct an investigation to protect funds from possible misappropriation by a fiduciary, unless there are facts * * * indicating misappropriation * * * In this event, a bank may be liable for participation in the diversion, either by itself acquiring a benefit, or by notice or knowledge that a diversion is intended or being executed". *(Matter of Knox [Columbia Banking Fed. Sav. & Loan Assn.],* 64 NY2d 434, 438.) It has long been the rule that negligent failure by the drawer to protect itself against fraud in procuring the making of drafts does not cast upon the drawer the risk that the draft will be paid upon a forged indorsement. *(American Sur. Co. v Empire Trust Co.,* 262 NY 181, 186.)

We specifically do not address the issue of whether or not UCC 4-207 and 3-406 are inconsistent. We simply find, that, as a matter of law, MHT's redemption of the bonds and delivery of the cashier's check, properly made payable to John Rodman, to Rodman's known fiduciary, did not substantially contribute to the subsequent forgery and negotiation of the check by Rodman's unscrupulous attorney within the meaning of UCC 3-406. Concur—Rosenberger, J. P., Ellerin, Kupferman, Asch and Smith, JJ.