**VECTRA BANK OF ENGLEWOOD,**
a Colorado corporation,
**Plaintiff–Appellee,**

v.

**BANK WESTERN, a Federal Savings Bank, Defendant–Appellant.**

No. 93CA2069.

Colorado Court of Appeals,
Div. I.

Jan. 12, 1995.

Quiat, Schlueter, Mahoney, Ross & Barber, P.C., Laurin D. Quiat, Denver, for plaintiff-appellee.

Silver & DeBoskey, P.C., Joe L. Silver, Kimberly E. Ghiselli, Denver, for defendant-appellant.

Opinion by Judge KAPELKE.

Defendant, Bank Western, appeals from the summary judgment entered in favor of plaintiff, Vectra Bank of Englewood (Vectra). We affirm in part, reverse in part, and remand with directions.

The following material facts are undisputed. On two separate occasions, Robert Griswold presented to Vectra tellers a notarized power of attorney together with several United States savings bonds. The power of attorney identified Griswold as the attorney-in-fact for Walter Noack, the owner of the savings bonds. The power of attorney authorized Griswold to redeem the savings bonds, which were specifically identified in the power of attorney by their serial numbers. At Griswold's request, the tellers issued cashier's checks payable to Noack for the value of the savings bonds. Neither Noack nor Griswold maintained an account with Vectra.

Several days after each cashier's check was issued, Griswold presented the checks to Bank Western tellers. The checks had been endorsed "Walter E. Noack: paid [sic] to the order of Robert E. Griswold; Robert E. Griswold." The tellers accepted the checks for deposit, and Bank Western collected from Vectra the full amount of each of the checks.

Vectra subsequently learned that Noack had died six years earlier and that the purported signatures of Noack on the power of attorney and both checks were forgeries. Vectra was required to reimburse the United States Department of Treasury for its payment upon redemption of the bonds.

Vectra thereafter filed suit against Bank Western asserting claims for conversion, monies had and received, and breach of warranty of title pursuant to §§ 4–3–417 and 4–4–207, C.R.S. (1992 Repl.Vol. 2). Bank Western asserted defenses, including equitable estoppel and a statutory negligence defense under § 4–3–406, C.R.S. (1992 Repl.Vol. 2).

Both parties filed motions for summary judgment, and the trial court granted Vectra's motion on the breach of warranty of title issue pursuant to § 4–4–207 and denied Bank Western's motion.

## I.

Bank Western first contends that the trial court erred in granting Vectra's motion for summary judgment. We disagree.

At the outset, we note that the purpose of summary judgment is to permit the parties "to pierce the formal allegations of the pleadings and save the time and expense connected with trial when, as a matter of law, based on undisputed facts, one party could not prevail." *Peterson v. Halsted,* 829 P.2d 373, 375 (Colo.1992).

■ Summary judgment is a drastic remedy and should be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Roberts v. Holland & Hart,* 857 P.2d 492 (Colo.App. 1993). A material fact is a fact that will affect the outcome of the case. *Peterson v. Halsted, supra.*

■ In reviewing the propriety of a summary judgment, an appellate court must apply the principle that the moving party has the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved against the moving party. *Peterson v. Halsted, supra; Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988).

## A.

Bank Western first argues that the court erred in entering summary judgment in favor of Vectra because Vectra's alleged negligence in issuing the checks precludes its recovery from Bank Western. We perceive no error.

Section 4–4–207, C.R.S. (1992 Repl.Vol. 2) provides that:

(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that:

(a) He has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title. . . .

■ Thus, under this provision of the Uniform Commercial Code, a bank that accepts and pays a check with an unauthorized or forged endorsement warrants to subsequent transferees the validity of that endorsement and may be held liable on that warranty. *See Thieme v. Seattle–First National Bank,* 7 Wash.App. 845, 502 P.2d 1240 (1972). The purpose of the warranty is to place on the bank taking an instrument from a person making an unauthorized endorsement the responsibility of collecting from that person. And, this warranty exists even when, as here, a cashier's check is involved. *Seattle–First National Bank v. Pacific National Bank,* 22 Wash.App. 46, 587 P.2d 617 (1978); *Thieme v. Seattle–First National Bank, supra.*

■ Here, the parties do not dispute that the endorsements on the cashier's checks were unauthorized and ineffective. Thus, under § 4–4–207, Bank Western breached its warranty of title to Vectra.

■ However, claims brought by a payor bank, such as Vectra, against a collecting bank, such as Bank Western, may be subject to the defense set forth in § 4–3–406, C.R.S. (1992 Repl.Vol. 2). *See Union Bank & Trust Co. v. Elmore County National Bank,* 592 So.2d 560 (Ala.1991); *Insurance Co. of North America v. Purdue National Bank,* 401 N.E.2d 708 (Ind.App.1980).

Section 4–3–406 provides that:

Any person who by his negligence *substantially contributes* to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business. (emphasis added)

Relying on § 4–3–406, Bank Western claims that Vectra negligently issued the cashier's checks and that it is therefore precluded from recovering the value of the checks from Bank Western. We disagree.

A panel of this court has interpreted the "substantially contributes" requirement of § 4–3–406 to mean that there must be some causal connection or relationship between the negligence of the plaintiff and the forged endorsement. *Willey v. Mayer*, 862 P.2d 959 (Colo.App.1993), *rev'd on other grounds*, 876 P.2d 1260 (Colo.1994). Thus, only negligence which proximately relates or contributes to the *forgery*, and not merely to the issuance of the checks, would relieve a collecting bank of liability for improper payment of a fraudulently endorsed check. *See Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 491 F.2d 192 (8th Cir.1974) (noting that the term "substantially contributes" requires some showing of a causal relationship equivalent to the "substantial factor" test generally applied in the law of negligence).

While Vectra's issuance of the cashier's checks based on the forged power of attorney may have been a lax and even negligent business practice, it did not induce or cause Bank Western to accept and pay on the fraudulently endorsed checks and therefore was not the proximate cause of the improper payment of the checks.

Thus, as a matter of law, Vectra's issuance of the checks did not "substantially contribute" to Bank Western's improper payment of the checks, and Vectra's conduct does not abrogate Bank Western's liability under § 4–4–207. *See Manufacturers Hanover Trust Co. v. Manufacturers & Traders Trust Co.*, 174 A.D.2d 548, 571 N.Y.S.2d 726 (1991); *East Gadsden Bank v. First City National Bank*, 281 So.2d 431, 435–36 (Ala.App.1973); *see also Guaranty Bank & Trust Co. v. Federal Reserve Bank*, 454 F.Supp. 488 (W.D.Okla.1977); *Maddox v. First Westroads Bank*, 199 Neb. 81, 256 N.W.2d 647 (1977); *Twellman v. Lindell Trust Co.*, 534 S.W.2d 83 (Mo.App.1976); *Society National Bank v. Capital National Bank*, 30 Ohio App.2d 1, 281 N.E.2d 563 (1972).

B.

Bank Western next contends that because Vectra issued the cashier's checks based on a forged power of attorney, it is equitably estopped from recovering from Bank Western. Again, we disagree.

The following elements must be established to support a claim of equitable estoppel: (1) the party to be estopped must know the facts and either intend the conduct to be acted on or act in such a way that the party asserting estoppel has a right to believe the other party's conduct is so intended; (2) the party asserting estoppel must be ignorant of the facts; and (3) the party asserting estoppel must reasonably rely on the other party's conduct to its detriment. *Committee for Better Health Care v. Meyer*, 830 P.2d 884 (Colo.1992); *Fanning v. Denver Urban Renewal Authority*, 709 P.2d 22 (Colo.App.1985).

Here, it is undisputed that Vectra was unaware when it issued the checks that the power of attorney was forged or unauthorized. Moreover, Bank Western did not rely on Vectra's issuance of the checks in accepting and paying on them. It relied on the fraudulent endorsements. Accordingly, Vectra is not estopped by its issuance of the cashier's checks from recovering from Bank Western.

Because the elements of equitable estoppel have not been established here, we need not determine whether the estoppel doctrine differs in any meaningful way from the statutory defense of § 4–3–406 or whether it applies to claims brought pursuant to § 4–4–207.

II.

Bank Western's final contention is that the trial court erred in awarding Vectra its attorney fees. We agree.

In the absence of statutory or contractual authorization, attorney fees generally are not recoverable in an action for breach of contract. *Bunnett v. Smallwood*, 793 P.2d 157 (Colo.1990).

Section 4-4-207(3), C.R.S. (1992 Repl.Vol. 2) provides, in pertinent part, that:

Damages for breach of [the warranties and the engagement to honor set forth in subsections (1) and (2) of this section] shall not exceed the consideration received by the customer or collecting bank responsible plus finance charges and expenses related to the item, if any.

Thus, the statute does not specifically provide for the recovery of attorney fees.

However, Official Comment 5 to § 4-4-207 indicates that:

The 'expenses' referred to in th[e] phrase ['expenses related to the item'] may be ordinary collecting expenses and in appropriate cases could also include such expenses as attorneys fees.

In our view, this Comment indicates that the statute might authorize the award, as damages, of attorney fees expended by a payor bank in defending an action brought against it by a third party as a result of the breach of warranty. *See Perkins State Bank v. Connolly,* 632 F.2d 1306 (5th Cir.1980). With respect to the attorney fees incurred by Vectra in prosecuting this action, however, there is no statutory authorization for recovery. Such fees are not "damages" and therefore are not within the contemplation of § 4-4-207(3). The majority of courts considering the issue have also reached this conclusion. *See Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra; E.S.P., Inc. v. Midway National Bank,* 466 N.W.2d 417 (Minn.App. 1991); *but see First Virginia Bank–Colonial v. Provident State Bank,* 582 F.Supp. 850 (D.Md.1984).

The summary judgment in favor of Vectra is affirmed. The award of attorney fees is reversed, and the cause is remanded for proceedings consistent with the views expressed in this opinion.

METZGER and CRISWELL, JJ., concur.